**Lillian CORDER, et al., Plaintiffs,**

v.

**Brad GATES, et al., Defendants.**

**No. CV85–0452–PAR.**

United States District Court, C.D. California.

June 14, 1988.

Stephen Yagman, Yagman & Yagman, P.C., Los Angeles, Cal., for plaintiffs.

Raymond J. Fuentes, Burke, Williams & Sorensen, Los Angeles, Cal., for defendants City of Bell, Cudahy, et al.

Dennis M. Gonzalez, Deputy County Counsel, Los Angeles, Cal., for defendant Roy Brown.

Timothy J. Stafford, Werve and Stafford, Santa Ana, Cal., for Orange County defendants.

## AMENDED MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

This round of cross motions arises out of a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiffs Lillian Corder and Roberta Lombardo sought recovery of damages from numerous individual law enforcement officers and from the County of Orange. Trial was to a jury, which on August 18, 1987 returned a verdict awarding plaintiffs $24,006 in compensatory and punitive damages against three of the defendants, Stanton Loder, Keith Brown, and Roy Brown. The jury also returned verdicts in favor of the remaining defendants;

of these, it found that several of the officers had violated plaintiffs' civil rights, but that they were entitled to qualified immunity.

On September 30, 1985 the defendants County of Orange, Cities of Bell and Cudahy, and County of Los Angeles timely made a Fed.R.Civ.P. 68 offer, in behalf of the individually named and served defendants to plaintiffs, of $45,000 in settlement of their claims. Plaintiff Roberta Lombardo accepted this offer and plaintiff Lillian Corder rejected it.

Plaintiffs bring the following motions: 1) to enforce the Rule 68 offer accepted by Roberta Lombardo; 2) for attorney's fees pursuant to 42 U.S.C. § 1988; 3) for a new trial and Judgment Notwithstanding the Verdict; 4) for sanctions and attorney's fees pursuant to Local Rule 7.15.4. Defendants bring the following motions: 1) for a new trial and JNOV (all defendants); 2) for attorney's fees pursuant to Rule 68 (County of Los Angeles); 3) to hold a witness in contempt (Roy Brown); and 4) to take the contempt motion off calendar (Roy Brown).

*Rule 68 Offer*

1. Enforcement of the Rule 68 Offer

■ Plaintiff Lombardo moves to enforce the Rule 68 judgment that defendants offered on September 30, 1985. Lombardo accepted the offer; Corder rejected it.

Defendants argue that the offer cannot now be enforced. They claim that it was a joint offer and that both plaintiffs had to accept it to render it enforceable. Because of the partial rejection, they contend that their offer was terminated.

Fed.R.Civ.P. 68 offers of judgment are analogous to contract offers in that there must be a "meeting of the minds" to render the offer enforceable. *Boorstein v. City of New York,* 107 F.R.D. 31 (S.D.N.Y.

1985). The offer was to "the Plaintiffs, LILLIAN CORDEL [sic] and ROBERTA LOMBARDO, Forty–Five Thousand Dollars ($45,000.00) in full and complete settlement of any and all claims arising from the above-entitled action. This offer to allow judgment includes payment of plaintiffs' costs and attorney's fees." The language on the face of the offer indicates that it was a joint offer addressed to both plaintiffs. There is no evidence to the contrary. Acceptance by one of the plaintiffs, accompanied by the rejection by the other, cannot constitute a valid acceptance of defendants' offer.

2. Effect of the Rule 68 Offer

■ Defendants also argue that because the rejection of the Rule 68 offer by one of the plaintiffs has the same effect as if it had been rejected by both, any award of costs or attorney's fees to the plaintiff pursuant to 42 U.S.C. § 1988 therefore should only be based on the fees and costs incurred prior to the rejection of the Rule 68 offer. Additionally, the County of Los Angeles requests that it be awarded costs and attorney's fees for the period after the rejection.[1]

Defendants' position is not sound. In calculating whether the judgment awarded plaintiffs is less than the Rule 68 offer, the court must also consider the pre-offer costs, including attorney's fees that the plaintiffs deserve pursuant to § 1988, that defendants will pay. Judge Posner in *Chesny v. Marek,* 720 F.2d 474, 476 (7th Cir.1983) added the *pre-offer* costs to the amount received in judgment in determining whether the total judgment exceeded the Rule 68 offer. The Supreme Court implicitly supported this practice when it held in *Marek* that it would be erroneous to consider the *post*-offer costs in determining the size of the total award. *Marek v. Chesny,* 473 U.S. 1, 6, 105 S.Ct. 3012, 3015, 87 L.Ed.2d 1, 8 (1985).[2] Nonetheless, in *Ma-*

**1.** In *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) the Supreme Court held that attorney's fees in an action under § 1988 were "costs" under Rule 68 and must be paid by the offeree. The district court in that action, however, held that Rule 68 merely prevented the

shift of attorney's fees to the defendant and did not shift the defense fees to the plaintiff; this ruling was not appealed and the Supreme Court did not reach this issue. *Id,* at p. 6 n. 1.

**2.** Two California cases interpreting the California analog of Rule 68 also combined the pre-of-

*rek* even this combined total did not equal the Rule 68 offer and the Rule therefore applied. In the instant case, however, defendants' $45,000 offer is not as great as the sum of the $24,006 in damages and $39,500 in pre-offer costs (including attorney's fees) that plaintiffs should receive. The court therefore finds that the Rule 68 offer did not exceed the award obtained by plaintiffs and Rule 68 does not prevent the payment of plaintiffs' costs by the defendants.[3]

*Plaintiff's Attorney's Fees*

Under 42 U.S.C. § 1988 prevailing parties may obtain attorney's fees. The amount of the award is within the sound discretion of the district court. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975). A hybrid version of the "lodestar" approach is required, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), which entails a two step analysis. The first is to multiply the reasonable number of hours expended on the litigation by a reasonable hourly rate; this calculation should approximate the "market rate" for similar legal services. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The second step is to adjust this lodestar figure upward or downward based on the "crucial factor" of the plaintiff's success, *Hensley v. Eckerhart*, 461 U.S. 424, 438, 103 S.Ct. 1933, 1942, 76 L.Ed.2d 40, 54 (1983); upward adjustments of the lodestar figure above the market rate are difficult to sustain. *Pennsylvania, supra,* 478 U.S. at 564–69, 106 S.Ct. at 3098–3100, 92 L.Ed.2d at 457–58.

1. The Lodestar Figure

The factors that generally determine the "reasonable" hours and rate used in the first step calculation are identified in the *Johnson* twelve factor test. *Jordan v. Multnomah,* 815 F.2d 1258, 1263 n. 11 (9th Cir.1987); *Kerr, supra.* Plaintiff bears the burden of presenting evidence that establishes the market rate for similar litigation; the mere affidavits of counsel do not meet this burden. *Jordan, supra* at 1263.

a) Reasonable Hours

■ Plaintiffs' counsel claims that his firm expended a total of 601.95 hours on the case over a period of two years. This figure is based on a daily log that indicates the type of work and the precise amount of time that counsel spent on the case. The record furnished is similar to that employed by major law firms for their private clients and therefore meets the standard suggested by the Supreme Court. *Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. at 1943, 76 L.Ed.2d at 55 (Burger, C.J., concurring); *Cf. Elser v. IAM National Pension Fund,* 579 F.Supp. 1375, 1378 (C.D. Cal.1984) (approving a fee award based on a declaration showing the nature of the work and the time expended).

The district court must review this record to determine that the time actually spent was reasonably necessary. *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378 (9th Cir.1984). Counsel for the "prevailing party should make a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1939, 76 L.Ed.2d at 40. As a practical matter the court must necessarily rely on the adversary system as the most reliable indicator of when time spent is substantially off base. Defendants list

---

fer costs and the actual award in comparing the amount plaintiff received and defendant's judgment. *Bennett v. Brown,* 212 Cal.App.2d 685, 28 Cal.Rptr. 485 (1963); *Shain v. City of Albany,* 106 Cal.App.3d 294, 165 Cal.Rptr. 69 (1980).

**3.** If the combined amount of the costs and the judgment did not exceed the offer, the court would face the interesting question, apparently one of first impression, of how to treat a joint Rule 68 offer in which one of the plaintiffs accepted the offer and the other rejected it—at situation that raises difficult equitable issues.

To treat the offer as rejected for this purpose would arguably unfairly extinguish the accepting plaintiff's right to costs and attorney's fees. Yet a rule that required joint acceptance might encourage multiple plaintiffs to hedge their bets by collusively having at least one party accept the offer and at least one other decline. That way they could both benefit if the judgment is greater than the offer, and could both avoid incurring costs and loosing attorney's fees if it is less.

several areas in which they feel that plaintiffs' counsel's billing is excessive. First, in 1985 plaintiffs' counsel spent 90.25 hours summarizing 17.50 hours of deposition testimony. Second, he spent 18 hours working on the case on the last day of trial. Third, the preparation of the fee application took 8.75 hours to draft. Defendant Los Angeles County, et al. Opposition to Fee Award, p. 8. Although defendants view these objections as mere "examples" of plaintiffs' counsel's over-billing, they do not cite other instances that they claim are unreasonable.

Based on the record, it is not possible to determine meaningfully the adequacy of individual entries in isolation from the issue of the propriety of the overall number of hours expended on the case. Different litigators have different styles; that plaintiffs' counsel occasionally opts for all-nighters and summarizes depositions himself should not be held against him if his overall figure is reasonable.[4] Moreover, it is not surprising to me that plaintiffs' counsel in this case could have spent six hours preparing for closing argument on the last day of trial, which together with the nearly 12 hours of trial, would account for what would otherwise appear to be a high number recorded on a single day.

There is nothing in the record to suggest that the over-all figure is unreasonable. Defendants do not argue that the numerous depositions that were taken were unnecessary; it is also true that there were numerous pre-trial conferences and it is no secret that the court, at least, regarded much of the process as unnecessary. However, requests for sanctions have already been dealt with and the hours expended as a whole appear in line with what turned out to be required. While not extraordinarily complex, the factual and legal issues in the case were also not that simple or routine. Some forty law enforcement officers were involved in the investigation, search and

seizure that were the subject of the suit. Finally, counsel for defendant County of Los Angeles spent approximately the same number of hours in defending the case, Defendant County of Los Angeles Motion for Attorney's Fees, at Attachment 1; the similarity between the two figures strongly suggests that the number of hours expended by plaintiffs' counsel is reasonable.

### b) Reasonableness of Rate

■ Plaintiffs' counsel's customary rate for this type of case was $200 for the period January 1, 1984–December 31, 1985 and $225 per hour from January 1, 1986 to date. There is evidence, Declaration of Brian O'Neill, Esquire, that the typical hourly rate in Los Angeles for trial attorneys with 13 years experience is between $180 and $225.[5] Plaintiffs' counsel's practice is concentrated in civil rights litigation.

Although the affidavit of the moving attorney that his or her fees are reasonable will not carry the burden of proof imposed, *Jordan, supra* at 1263, nor does an affidavit of another attorney that fails to cite that attorney's actual rates, or which does not give specific examples of the market rate, add greatly to the record, *Id.* n. 9, nonetheless I know from my own experience that litigators in the Los Angeles area with thirteen years experience charge an hourly rate that comports with the evidence from Mr. O'Neill. Both declarations make some reference to what the attorneys perceive to be the going rate in the community. Moreover, defendants do not really suggest an alternative market rate; instead, they cite examples from other communities over a period of several years that are not particularly relevant. Defendant Los Angeles County Opposition, at p. 11. While plaintiffs' counsel has therefore presented enough evidence of the market rate to sustain a fee award, the $225 figure he seeks is at the high end of the market range. Although the matter was tried effi-

---

**4.** Obviously individual items that are logically impossible ("twenty-five billable hour days") or facially egregious should be stricken even if the over all figure is reasonable. None appears here.

**5.** Plaintiffs' counsel's reference to the fees that he has been awarded in similar cases provides excellent support for the suggested rate. Unfortunately, however, this information is not included by reference in the declaration and is thus not part of the record.

ciently and ably, neither the pre-trial process nor the paperwork submitted throughout was quite so efficient and able. I find that an hourly rate of $180 for 1984–85 and $200 for 1986–87 is appropriate. *Cf. Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 956 (1st Cir.1984) (Professor Lawrence Tribe of the Harvard Law School awarded fees at the rate of $175).[6]

### 2. Plaintiffs' Degree of Success

■ The second step in the fee analysis is to evaluate the prevailing parties' degree of success and adjust the lodestar figure accordingly. *But see, Pennsylvania,* 478 U.S. at 564, 106 S.Ct. at 3098, 92 L.Ed.2d at 456 (strong presumption that the lodestar figure represents a reasonable fee); *Blum,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (lodestar figure more than a mere rough guess). In *Hensley, supra,* the Court supported the possibility of a downward adjustment of the lodestar figure when the plaintiffs had prevailed, but were not particularly successful. The Court held that the downward adjustment could occur either in calculating the reasonable hours and rate or as an over all adjustment of the lodestar figure. *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success"). The Court has also noted that prevailing at trial " 'may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved,' " *Marek,* 473 U.S. at 8–11, 105 S.Ct. at 3016–3017, 87 L.Ed.2d at 9–10 (quoting *Hensley* ); and that "[i]n a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits

from the post-offer services of his attorney." *Id.,* 473 U.S. at 6, 105 S.Ct. at 3015, 87 L.Ed.2d at 8.[7]

A downward evaluation in this case is appropriate. Even though the Rule 68 offer does not block the award of fees, the court cannot ignore the reality that the net effect of plaintiffs' undergoing the ordeal of trial was to win a much smaller figure than they could have obtained much earlier by simply accepting defendants' offer. Plaintiffs' counsel's arguments in his fee request actually bolster the view that the trial did not entirely serve their interests. If $24,000 is "a lot" of money to plaintiffs, as counsel states, Plaintiffs' Reply, p. 3, then the $45,000 offered by defendants would have been "a lot" more. And because plaintiffs' counsel admits that he thought the case had little economic value, the decision to proceed to trial seems all the more inexplicable. While this decision was ultimately one for the plaintiffs to make, it is nonetheless hard to view the result as wholly successful.

I also recognize that in civil rights cases the degree of success does not depend on the size of the monetary award alone. *City of Riverside v. Santos Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). In this case, however, there are no substantial non-monetary factors that counterbalance the relatively small amount of the award. No injunctive relief was obtained and the case did not result in any institutional restructuring. *Cf. Hensley, supra.* Furthermore, no new principles of constitutional law were formulated. The action will have had both an educational and deterrent effect on the individual defendants affected; however, the situation that gave rise to the operative events is fairly unique and unlikely to repeat in any event. A downward adjustment of the

---

**6.** Plaintiffs' counsel cites the contingent nature of his fee arrangement as a factor that the Court should consider in determining his rate without mentioning that the Supreme Court has recently greatly restricted the consideration of this factor. *Pennsylvania v. Delaware Valley Citizens' Council,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Pennsylvania* II).

**7.** An advantage of considering this factor at this stage is that determining a reasonable hourly rate can often take on an unfortunate personal cast ("How good a lawyer is this person?"), while analysis of success in a particular case suggests a more objective approach.

lodestar figure by 20% is therefore appropriate.

In summary, the court calculates costs as follows. Plaintiffs' counsel's fees for 1985 are $42,997.50 (245.2 hours at $175 per hour) and for 1986–87 are $66,700 (333.5 hours at $200 per hour). Paralegal costs are $1,462.50 and costs for copying are $1,756.25. The total, after application of the 20% discount, is $90,333.

*Plaintiffs' J.N.O.V. and New Trial Motions*

■ Plaintiffs argue that they are entitled to a J.N.O.V. and a new trial because certain of the defendants are not entitled to the affirmative defense of qualified immunity. Plaintiffs do not advance any arguments that they have not previously tendered on this issue.

The standards for granting a motion for judgment notwithstanding the verdict are the same as those governing the granting of a directed verdict. *Hallmark Industry v. Reynolds Metals Co.*, 489 F.2d 8 (9th Cir.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. 9 Wright & Miller, *Federal Practice & Procedure:* § 2524; *State of Washington v. United States*, 214 F.2d 33, 40–41 (9th Cir. 1954). Thus, a motion for J.N.O.V. may only be granted when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Id.; Los Angeles Memorial Coliseum Comm'n v. NFL*, 726 F.2d 1381 (9th Cir.1984); *Forro Precision, Inc. v. International Business Machines Corp.*, 673 F.2d 1045 (9th Cir.1982). The court is not free in such a situation to weigh the evidence or to pass on the credibility of the witnesses, *Cockrum v. Whitney*, 479 F.2d 84 (9th Cir.1973), or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made, *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077,

87 L.Ed. 1458 (1943); *Schnee v. Southern Pacific Co.*, 186 F.2d 745 (9th Cir.1951), and give that party the benefit of all reasonable inferences from the evidence. *McCollum v. Smith*, 339 F.2d 348 (9th Cir. 1964). Simply stated, the standard is "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2nd Cir.1970); *see also Gordon Mailloux Enterprises, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 366 F.2d 740, 741 (9th Cir.1966) (reversing district court's entering of j.n.o.v. where consideration of the proof favorable to non-movant revealed "substantial evidence" to support the jury's determination).

Rule 59 of the Federal Rules of Civil Procedure provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Rule 59 gives the trial judge the power to prevent what she considers to be a miscarriage of justice; thus, she may order a new trial if she deems it in the interest of justice to do so. *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir.1957). The court should not grant a new trial unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. 11 Wright & Miller, *Federal Practice & Procedure* § 2803. The burden of showing harmful error rests on the party seeking the new trial. *Id.* A new trial may not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result. *Id.* at § 2805.

Plaintiffs do not advance compelling factual or legal arguments for overturning the verdict. The court believes that the jury instruction on the defense of qualified immunity accurately reflects current law. *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Defendants' J.N.O.V. and New Trial Motion*

■ Defendants Brown and Loder contend that there was no basis for an award of punitive damages against them. However, evidence of the circumstances under which plaintiffs were ordered out of their house, their treatment by defendants, and the basis upon which the defendants acted is reasonably susceptible of a finding that these officers' treatment of plaintiffs was oppressive.

*Contempt Motion*

The motion to hold Yagman in contempt for having failed to appear at a deposition is taken off calendar, subject to the condition that plaintiffs' attorney's fees are paid. Despite being advised of improper service, defendant persisted in going forward with the motion for contempt, thereby necessitating the preparation and filing of a response.