Lillian CORDER, Roberta Lombardo, Plaintiffs–Appellees,

v.

Brad GATES, Sheriff, Defendant,

and

Roy Brown, et al., Defendants–Appellants.

Lillian CORDER; Roberta Lombardo, Plaintiffs–Appellants,

v.

Brad GATES, Sheriff; Roy Brown, et al., Defendants–Appellees.

Nos. 88–5555, 88–5588.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1991.

Decided Oct. 16, 1991.

Timothy T. Coates, Los Angeles, California, for defendants-appellants-appellees.

Stephen Yagman, Yagman & Yagman, Venice, California, for plaintiffs-appellees-appellants.

Before PREGERSON, HALL and BRUNETTI, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant Roy Brown appeals the district court's award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, arguing, inter alia, that the amount of attorney's fees awarded should be reduced further. Plaintiffs cross-appeal arguing that the district court improperly reduced the amount of attorney's fees owed to them.

I

Lillian Corder and Roberta Lombardo brought suit on the basis of the civil rights statute, 42 U.S.C. § 1983. Plaintiffs alleged that defendants illegally detained them and conducted an illegal search of their residence in a misguided attempt to find an escaped prisoner. Specifically, plaintiffs alleged in their complaint that on January 18, 1985 they resided together at 4630 Live Oaks in Cudahy, California and at approximately 3:00 a.m. defendants stormed plaintiffs' residence, ordered them from their home, and detained them for approximately five hours without pressing legal charges. Plaintiffs further claimed that defendants "absent any warrant ... shot out the windows of the home, entered the home, shot chemical gas into the home, [and] shot out the ceiling of the home...."

Plaintiffs named as defendants the following individuals and entities: Orange County Sheriff Brad Gates, twenty-five Orange County deputy sheriffs, Los Angeles County Sheriff Sherman Block, twenty-five Los Angeles deputy sheriffs, Bell/Cudahy police chief Frank Fording, ten Bell/Cudahy police officers, the County of Los Angeles, the County of Orange, the City of Bell, and the City of Cudahy. Roy Brown, the highest ranking Los Angeles County Sheriff's officer present during the operation, authorized the entry of plaintiffs' home.

On September 30, 1985, defendants made a $45,000 settlement offer, which plaintiffs rejected.[1] This offer included the $39,000 worth of plaintiffs' attorney's fees that had then accrued, leaving the plaintiffs with $6,000.

After trial, the jury, by special verdict, awarded damages in favor of Lillian Corder as follows: $1.00 in compensatory damages and $5,000 in punitive damages against Bell/Cudahy Police Sergeant Stanton Loder; $1.00 in compensatory damages and $10,000 in punitive damages against Orange County Sheriff's officer Keith Brown; and $1.00 in compensatory damages and $1000 in punitive damages against appellant, Commander Roy Brown of the Los Angeles County Sheriff's Department. The jury awarded damages in favor of Roberta Lombardo as follows: $1.00 in com-

---

1. Roberta Lombardo accepted this offer, but Lillian Corder rejected it. The district court held that, since the offer was made to both of the plaintiffs, it had to be accepted by both them, and Roberta Lombardo's acceptance of the offer was therefore ineffective. *Corder v. Gates,* 688 F.Supp. 1418, 1420 (C.D.Cal.1988). This ruling has not been appealed and it therefore binds the parties.

pensatory damages and $2,500 in punitive damages against Stanton Loder; $1.00 in compensatory damages and $5,000 in compensatory damages against Keith Brown; and $1.00 in compensatory damages and $500 in punitive damages against appellant Roy Brown. The total compensatory and punitive damages amounted to $24,006. The district court subsequently awarded plaintiffs $90,333 in attorney's fees.

Plaintiffs cross-appeal arguing that the district court erred when it adjusted the fee award downward to reflect limited success. Defendant Roy Brown appeals. Brown makes three arguments: First, Brown argues that the attorney's fees awarded by the district court must be reduced further to account for plaintiffs' limited success; second, Brown argues that the district court must apportion liability for attorney's fees among defendants in accord with their relative culpability, claiming that each defendant's relative culpability is reflected in the proportion of the overall jury verdict that is directed against him; third, Brown argues that the district court must decrease his liability for attorney's fees to account for fees already paid by other defendants through settlement.[2]

## II

■ District court awards of attorney's fees under section 1988 are reviewed for abuse of discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated on other grounds,* 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), *reinstated,* 886 F.2d 235 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990). As such, the district court's fee award will be overturned if it is based on an inaccurate view of the law or a clearly erroneous finding of fact. *See Cabrales v. County of Los Angeles,* 935 F.2d 1050 (9th Cir.1991); *Hunt v. National Broadcasting Co.,* 872 F.2d 289,

292 (9th Cir.1989) (reviewing denial of preliminary injunction).

## III

Section 1988 authorizes the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (quotation omitted). "Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large...." *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 945–46, 103 L.Ed.2d 67 (1989).

*Blanchard* highlights the principles that govern appellate review of district court fee awards. The *Blanchard* Court addressed the question whether a fee agreement between a plaintiff and her lawyer acted as a cap on the amount of attorney's fees that a district court could find "reasonable." The Court held that the discretion of the district courts to award "reasonable" fees is not circumscribed by fee agreements, though the district courts have liberty to consider such agreements when determining a "reasonable" fee. 489 U.S. at 94, 109 S.Ct. at 944–45. Defendant argued that failing to "cap" fees would result in a "windfall" to plaintiff's attorneys. The Court responded:

> [T]he very nature of recovery under § 1988 is designed to prevent any such "windfall." Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees under § 1988 that

---

**2.** Roy Brown claims on appeal that after trial, but before the hearing at which attorney's fees were set, unspecified defendants who were found liable at trial executed settlement agreements of uncertain terms with the plaintiffs.

Brown further claims that, after attorney's fees were awarded, additional settlement agreements were executed between certain unspecified defendants and the plaintiffs.

the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case.

*Id.* at 96, 109 S.Ct. at 945–46.

■■■ *Blanchard* evidences three principles. First, discretionary judgments of the district courts, which watch civil rights cases unfold before them, must be respected. Second, the discretion of the district courts must not be unduly limited by mechanistic rules. Third, fee awards must ensure that civil rights lawyers receive *reasonable* compensation for their services.[3] This third principle limits the district court's discretion, for this third principle underlies the requirement that the district courts carefully calculate hours and rates and fully articulate their reasoning. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

### A

We first consider whether the *method* used by the district court to calculate attorney's fees was both incorrect and harmful, so that its fee award must be invalidated. The district court first determined the reasonable rate of compensation, and the reasonable number of hours worked, then multiplied hours by rate to arrive at the presumptively reasonable fee that is known as the "lodestar" figure. *Hensley*, 461 U.S. at 433–37, 103 S.Ct. at 1939–41. The district court then adjusted this "lodestar" figure to account for the plaintiffs' limited success.

We have held that the procedure followed by the district court in calculating fees is disfavored. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487–88 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990); *Cabrales*, 864 F.2d at 1464. Since consideration of limited success is presumably "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," district courts should not ordinarily make a separate adjustment for limited success. *Cabrales*, 864 F.2d at 1464 (quoting *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.).

■ However, the fact that the district court followed a disfavored procedure for calculating fees does not necessarily nullify the district court's fee award. In *Cabrales* the district court followed the same procedure for calculating fees as was followed in the instant case, yet we affirmed the fee award because the record showed that "the district court made only one reduction for lack of success." *Cabrales*, 864 F.2d at 1465. We said:

> Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court did not "count" for lack of success twice. We therefore hold that the district court's reduction of the lodestar, if warranted, constitutes a "harmless error."

*Cabrales*, 864 F.2d at 1465.

■ In the instant case, as in *Cabrales*, the district court partitioned its "lodestar" analysis from consideration of plaintiffs' degree of success, and accounted for plaintiffs limited success only once. Thus, any error was harmless.

### B

We turn to the substance of the district court's fee award. Since the parties accept the district court's calculation of the "lodestar" amount, the question is whether the district court abused its discretion when it reduced the lodestar figure by 20% to account for plaintiffs' limited success.[4]

It is clear that a 20% reduction for limited success is in some cases sustainable. In

---

**3.** Nevertheless, it is clear that an award of a "reasonable" attorney's fee may be made to a prevailing plaintiff notwithstanding the fact that the plaintiff's attorney has agreed to accept a smaller fee, or even no fee at all. *Blanchard*, 489 U.S. at 95, 109 S.Ct. at 945. Similarly, the "reasonable" fee, as calculated by the district

court, may fall short of the actual fee that the plaintiff's lawyer charges. *Id.*

**4.** Plaintiffs argue that the lodestar amount should not have been reduced at all for limited success. Defendants argue that the lodestar amount must be reduced further.

*Cabrales*, 864 F.2d at 1454, plaintiff sued the county, the commander of the county jail, and a number of other jail employees. Plaintiff was the mother of former jail inmate Sergio Alvarez Cabrales. Cabrales, despite his obvious psychiatric problems, was not given needed medical attention, and was housed in facilities used for the general inmate population. While in solitary confinement, Cabrales hanged himself. Plaintiff originally brought suit against twenty or more individual sheriff's deputies who worked at the jail, but succeeded only on her claim that the county, through its policymaker Black, maintained a policy of deliberate indifference to the safety and medical needs of inmates. 864 F.2d at 1458.

We upheld the district court's 25% reduction for limited success. 864 F.2d at 1466. We said:

> In cases in which a plaintiff's success is limited, we have instructed the district court to apply a two-part analysis: First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims.... If the unsuccessful and successful claims are related, then ... the

court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.

*Id.* at 1465 (citations omitted). *See also Hensley*, 461 U.S. at 435–36, 103 S.Ct. at 1940–41.

■ In the instant case, all of the claims arose from a "common core of facts," the search of plaintiffs' house. Further, all of the claims are "based on related legal theories," the Fourth Amendment. However, since the plaintiffs succeeded against only a few defendants, a reduction for limited success was permissible. *Cabrales*, 864 F.2d at 1466.[5] "The purpose of a fee award is to encourage litigation and voluntary compliance with civil rights laws." *Woods v. Graphic Communications*, 925 F.2d 1195, 1207 (9th Cir.1991) (citations omitted). In cases such as the present one, where a plaintiff brings an action against a large number of defendants, but manages to prevail only with regard to a few, perhaps an award granting 100% of the ac-

---

5. Our recent decision in *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir.1991) *("Cabrales VII")* in no way undercuts *Cabrales*.

*Cabrales VII* grew out of a complex series of appeals. Cabrales won her section 1983 action in the district court, receiving a jury award of $150,000 and attorneys fees of $152,284.75. We affirmed in *Cabrales*, 864 F.2d at 1466, and subsequently awarded Cabrales $45,576.75 for fees arising from opposition to the County's appeal. *Cabrales v. County of Los Angeles*, 875 F.2d 740 *("Cabrales II")*. The Supreme Court granted certiorari, vacated our judgment, and remanded the case for further consideration in light of *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). *County of Los Angeles v. Cabrales*, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989) *("Cabrales III")*. On remand, we considered *Harris* and found it inapposite; we reinstated our original decision affirming the district court's judgment. *Cabrales v. County of Los Angeles*, 886 F.2d 235 (9th Cir.1989) *("Cabrales IV")*. The County's second petition for certiorari was denied. *County of Los Angeles v. Cabrales*, —— U.S. ——, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990) *("Cabrales V")*. Cabrales then moved before the Supreme Court for attorney's fees incurred in op-

posing both petitions. The Supreme Court denied the motion without prejudice. *County of Los Angeles v. Cabrales*, —— U.S. ——, 110 S.Ct. 2615, 110 L.Ed.2d 637 (1990) *(Cabrales VI)*. In the district court, Cabrales renewed her motion for attorney's fees incurred in opposing the two petitions for certiorari. The district court awarded Cabrales $3,125 in fees arising from her opposition to the second petition, but awarded no fees for opposition to the first petition for certiorari. We reversed. *Cabrales VII*, 935 F.2d 1050 (9th Cir.1991).

*Cabrales* and *Cabrales VII* involve very different circumstances. In *Cabrales* the plaintiff permanently lost a number of her claims, and prevailed on other claims. In contrast, in *Cabrales VII* the plaintiff won on her solitary claim, but suffered a temporary setback along the way. The rule of *Cabrales VII* was clearly stated: "If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings." In the instant case, unlike *Cabrales VII* but as in the original *Cabrales*, we deal with plaintiffs who have *permanently lost* on many of their claims, and prevailed on certain other claims. Thus, this case is governed by the rule of *Cabrales*, not the rule of *Cabrales VII*.

crued attorney's fees encourages *too* much litigation. While it is true that the plaintiffs succeeded in proving a civil rights violation, they did so at the cost of forcing many individuals to bear the expense of defending against apparently meritless allegations. Such an award implicitly approves the plaintiff's strategic decision to pull in as many *potential* defendants as possible in an attempt to hold *someone* liable. Plaintiffs initially accused more than fifty defendants of violating their civil rights, yet obtained a verdict against three.[6] Thus, to say that the plaintiffs succeeded in the instant case does not mean that their success was not limited.[7] Obviously, then, the district court would have sound reasons for reducing a fee award in this type of a situation.

■■■ On the other hand, our cases also make clear that the district court could have awarded plaintiffs the full lodestar amount. In *Rivera v. City of Riverside,* 763 F.2d 1580 (9th Cir.1985), *aff'd on other grounds,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), plaintiffs sued thirty-two defendants, including thirty individual police officers. Plaintiffs prevailed against only six officers, winning a verdict totaling $33,350. 477 U.S. at 564, 106 S.Ct. at 2689. In *Rivera,* as in *Cabrales,* all of the plaintiffs' claims stemmed from a single incident and involved a common core of facts. Nevertheless, we held that the district court did not abuse its discretion when it

declined to reduce the attorney's fee award for limited success, despite the plaintiffs' failure to prevail against the majority of the original defendants. Thus, *Cabrales* and *Rivera* together indicate that district courts have considerable discretion in determining attorney's fees, a rule that is in conformity with the teachings of *Blanchard* and *Hensley.*[8]

■■■ Despite the discretion evidenced by *Cabrales* and *Rivera,* we have held that the district courts must clearly articulate sound reasons in support of their fee awards. *Cunningham,* 879 F.2d at 483–84. For although the district courts must be given much discretion to shape awards of attorney's fees, these awards must be subject to appellate review, and they must be reversed if based on clearly erroneous considerations. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Cunningham,* 879 F.2d at 483–84.

■■■ In the instant case the district court's 20% reduction of the "lodestar" amount was based on clearly erroneous reasoning and cannot stand. The district court first reasoned that Rule 68 of the Federal Rules of Civil Procedure did not govern because the jury's verdict, when combined with the attorney's fees that had accrued before the defendants' pretrial settlement offer was made, exceeded the defendants' offer.[9] *Corder v. Gates,* 688

---

6. By the time of the pretrial conference, all but 37 of the originally named parties were dismissed.

7. Moreover, reducing the award in this situation serves as a deterrence for future plaintiffs and will force them to move cautiously before bringing suit against individuals only tangentially related to instant case.

8. The dissent is in error when it states that this panel must follow *Rivera* and ignore *Cabrales.* Generally, to the extent that a panel is confronted with an irreconcilable intra-circuit conflict, the proper procedure is to call for *en banc* reconsideration. *Antonio v. Wards Cove Packing Co.,* 810 F.2d 1477, 1478–79 (9th Cir.1987) (en banc), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). As stated above, however, we do not believe *Rivera* and *Cabrales* are in conflict.

9. Rule 68 provides in relevant part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer with costs then accrued. An offer not accepted shall be deemed withdrawn.... *If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.*
Fed.R.Civ.P. 68 (emphasis added).

The plaintiffs' attorneys had accrued $39,000 in fees at the time of the $45,000 Rule 68 offer. Because successful plaintiffs are entitled to attorney's fees under section 1988, we must consider the amount of attorney's fees accrued at the time of the offer when deciding whether the plaintiffs improved their positions by going to trial. The jury verdict of $24,000 plus the pre-offer accrued fees of $39,000 exceeded the $45,-000 Rule 68 offer. Thus, because the plaintiffs

F.Supp. 1418, 1420–21 (1988). Yet the district court cited plaintiffs' rejection of the settlement offer when reducing the attorney's fee award for limited success, stating that the result of plaintiffs' decision to proceed to trial "was to win a much smaller figure than they could have obtained much earlier by simply accepting defendants' offer." *Corder*, 688 F.Supp. at 1423. As the district court recognized in its discussion of Rule 68, plaintiffs gained over $18,000 by litigating their case to its conclusion. We reverse, remand, and provide the district court with another opportunity to consider whether an adjustment to the lodestar amount is appropriate. *See United States v. State of Washington*, 935 F.2d 1059 (9th Cir.1991).

## IV

We next consider whether the district court abused its discretion when it declined to allocate the attorney's fee award among the individual defendants.[10] Brown argues that the district court must apportion liability for attorney's fees among defendants in accord with their relative culpability, claiming that each defendant's relative culpability is reflected in the proportion of the overall jury verdict that is directed against him.

Three recent Ninth Circuit cases have dealt with the issue of apportionment.[11] In *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125–26 (9th Cir.1981), plaintiffs sued both state and federal defendants to enjoin construction of a freeway built by the state but funded by the federal government. Plaintiffs prevailed on one of their twelve claims. Thus, attorney's fees were available to plaintiffs under section 1988. *See Jensen v. City of San Jose*, 806 F.2d 899, 900 (9th Cir.1986) (en banc). However, the federal defendants were exempted from liability for their share of attorney's fees by 28 U.S.C. § 2412. *Adams*, 657 F.2d at 1125. The district court apportioned 75% of the attorney's fees to the state defendants, who were the primary focus of the plaintiffs' action. We faced the question whether the district court abused its discretion when it executed this lopsided apportionment. We held that, since "probably at least 75% of plaintiffs' counsel's preparation dealt with the state defendants, as opposed to the federal defendants," the district court had not abused its discretion. *Adams*, 657 F.2d at 1125–26.

We again considered apportionment of attorney's fee liability among defendants in *Sable Communications of California v. Pacific Telephone & Telegraph Co.*, 890 F.2d 184, 194 (9th Cir.1989). Sable, a

---

improved their position by rejecting defendants' offer and going to trial, Rule 68 did not control.

**10.** Contrary to plaintiffs' assertions, the apportionment issue was raised below. *See* Fed. R.Civ.P. 46.

**11.** Brown invokes authority from other circuits to support his argument that apportionment of attorney's fees based on relative fault is mandatory. The strongest case for Brown is *Dean v. Gladney*, 621 F.2d 1331 (5th Cir.1980). Yet even *Dean* does not lend Brown compelling support. The case involved a police riot in which numerous separate acts were committed by officers acting independently of each other. *Id.* at 1332–33. For example, an Officer Maddox locked four women in an unventilated police car for one and one-half hours. An Officer Saldivar indiscriminately arrested numerous citizens and threatened a woman who was taking pictures of the riot.

The *Dean* court made two rulings that are relevant to the question of apportionment of

attorney's fees. First, the court held that the district court properly declined to assess attorney's fees against certain defendants who *had not* been held liable to plaintiff. Liability on plaintiff's claim was held to be a prerequisite to liability for attorney's fees. The rule is the same in this circuit. *Jensen v. City of San Jose*, 806 F.2d 899 (9th Cir.1986) (en banc). But this rule offers Brown no solace, since he *has* been held liable.

The *Dean* court also held that officers whose liability is based on distinct incidents should have attorney's fees assessed against them on an individual basis. Again, this holding offers Brown little solace. For the *Dean* court based its view that fees should be apportioned on the fact that the incidents from which the defendants' liabilities arose were separate and discreet. 621 F.2d at 1338–39. In contrast, in the instant case all of the defendants' liabilities arose from a single incident. Further, the actions of the defendants in the instant case were not independent. Rather, defendants actions were centrally controlled and were part of a common course of conduct.

"phone sex" company, brought suit against Pacific Bell under section 1983. Sable sought to enjoin Pacific Bell from interfering with Sable's operations. General Telephone intervened in the suit as an additional defendant. Sable won both its injunction and $150,000 in attorney's fees, fees for which General Telephone and Pacific Bell were to be jointly and severally liable. On appeal, we held that the district court had abused its discretion when it failed to apportion the attorney's fee award between Pacific Bell and General Telephone. We said: "If, as appears likely, the conduct of Pacific Bell was the focus of the litigation and required a larger portion of the time of plaintiff's counsel, it is appropriate to allocate the burden of the fee award accordingly." *Sable*, 890 F.2d at 194.[12]

Our most recent decision is *Woods v. Graphic Communications, Inc.*, 925 F.2d 1195, 1206 (9th Cir.1991). Woods brought a section 1981 action against his employer, Princeton Packaging, Inc. ("Princeton"), and his union, alleging racial harassment that interfered with his ability to enforce his labor contract. Woods prevailed in the district court and was awarded attorney's fees under section 1988. For purposes of apportioning fees between the union and Princeton, the district court divided the lawsuit into three phases. Phase I consisted of work performed before the union was a party to the lawsuit. Phase II included work performed while both Princeton and the union were parties, and Phase III included work performed after Princeton was dismissed. The union did not challenge the court's award of fees for half of Phase II and all of Phase III, but the union did argue that it should not be liable for a portion of the fees incurred during Phase I. We acknowledged that the party that is the focus of the litigation should ordinarily bear the bulk of the litigation's costs. Nevertheless, we held that the district court in *Woods* did not abuse its discretion in allotting a portion of Phase I fees to the union, since a portion of Woods' efforts

had been directed at the union even during Phase I, and "[t]he district court considered the union's arguments on a motion for reconsideration and reduced the union's share for Phase II." *Woods*, 925 F.2d at 1207.

All three of our apportionment cases have focused on the *time expended* by the plaintiff in pursuing each defendant when deciding whether apportionment was proper. *Woods*, 925 F.2d at 1207; *Sable*, 890 F.2d at 194; *Adams*, 657 F.2d at 1125–26. *Accord Koster v. Perales*, 903 F.2d 131, 138–40 (2d Cir.1990) (holding apportionment not mandated because, inter alia, the state failed to show that less overall time was expended against it than was expended against its codefendants); *Little Rock School Dist. v. Pulaski County Special School Dist.*, 787 F.2d 372, 374 (8th Cir. 1986) (in a case involving intervenors, the circuit court apportions fees based on time expended), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986); *Knights of Ku Klux Klan v. East Baton Rouge Parish School Board*, 735 F.2d 895, 901 (5th Cir.1984) (upholding the district court's allocation of 90% of attorney's fees to the federal government, since the federal government played the major role in the dispute underlying the lawsuit).

The focus on time expended in *Adams*, *Sable*, and *Woods* is consistent with the "lodestar" calculation, which forms the basis for the overall attorney's fee award, and which focuses on the time reasonably expended by plaintiffs. *Hensley*, 461 U.S. at 433–34, 103 S.Ct. at 1939–40. Indeed, the consistency of *Adams*, *Sable*, and *Woods* with the "lodestar" is an important virtue. It would make little sense to determine the overall liability of all defendants based on one consideration, then determine the individual liability of defendants based on an entirely different consideration. Thus, since the total amount of attorney's fee liability faced by any group of defendants is based on the

---

12. In *Sable* we were also concerned with the federal policy of facilitating interventions in civil rights cases in order to avoid piecemeal litigation. *Sable*, 890 F.2d at 194. This federal policy would be substantially prejudiced by application of a rule that saddled intervenors like General Telephone with attorney's fees that accrued before the intervenor joined the lawsuit.

number of hours that the plaintiff reasonably expended against them, the defendants' rights *inter se* should share this feature. And under *Adams, Sable,* and *Woods,* the defendants' rights *inter se* do share this feature.

■ Brown argues, purportedly on the basis of *Adams* and *Sable,* that the district court must apportion attorney's fees in accord with each defendant's relative liability under the jury's verdict. As we have just seen, *Adams* and *Sable* provide little support for this argument. Moreover, Brown has simply misapprehended the purpose of attorney's fees under section 1988. Attorney's fees *are not* awarded to punish defendants. Attorney's fees *are* awarded to encourage meritorious civil rights actions by ensuring reasonable compensation for victorious plaintiffs' attorneys. *Blanchard,* 489 U.S. at 96, 109 S.Ct. at 945–46; *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. Thus, we have prescribed apportionment of attorney's fees when the *time expended* by the plaintiff in pursuing each defendant was grossly unequal. *Sable,* 890 F.2d at 194. We have never mandated apportionment based on each defendant's relative liability under a jury's verdict. Brown's rule "would negate the discretionary power granted the district court[s] under the Act," and we reject it. *Adams,* 657 F.2d at 1125.[13]

■ Applying the rule of *Adams, Sable,* and *Woods* to the instant case, we see that a single incident led to the liability of all of the defendants, and that Brown was integrally involved in this incident. Indeed, Brown authorized the entry of plaintiffs' home that gave rise to their lawsuit. Thus, the bare circumstances of the instant case do not support an inference that the plaintiffs expended less time pursuing Brown than they expended pursuing his codefendants. *Cf. William C. Haas v. City & County of San Francisco,* 605 F.2d 1105, 1117 (9th Cir.1979) (no abuse of discretion for district court to allocate attorney's fees based on percentage of time each defendant was involved in the breach of contract that formed the basis for the suit). Moreover, Brown has offered no evidence that plaintiffs expended less time pursuing him than they expended pursuing his codefendants. In these circumstances, the district court did not abuse its discretion when it declined to apportion liability for attorney's fees among defendants.

## V

■ Finally, Brown argues that the district court abused its discretion when it failed to offset the attorney's fee award to account for fees that have been paid through settlement. We face a record that is entirely devoid of information about these alleged post-trial settlements; we have little information about either the number of settlements that have taken place, or the amount of these settlements. An appellate court may properly decline to reach issues not addressed by the court below in order to obtain both a fully developed record and the benefit of the district court's treatment of the issue. *See Golden Nugget, Inc. v. American Stock Exchange, Inc.,* 828 F.2d 586 (9th Cir.1987). Since we are poorly positioned to resolve the offset issue, we do not now reach it. On remand, the district court should inquire into the matter.

AFFIRMED in part, REVERSED in part, and REMANDED.

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I agree that the district court abused its discretion when it reduced the plaintiffs' award of attorney's fees. I do not agree, however, that it is ever permissible to re-

**13.** Brown also claims that language in *Sable* suggests that district courts must subjectively evaluate each defendant's culpability, then apportion attorney's fees in accord with this evaluation. Even if *Sable* requires that the district courts engage in free-form, subjective evaluations of each defendant's culpability, a point that is not obvious, the district court's refusal to apportion cannot be challenged on that basis in the instant case. Brown authorized the invasion of the plaintiffs' home, and therefore does not seem much less culpable than his codefendants. Certainly, Brown was not so dramatically less culpable that the district court abused its discretion when it declined to apportion attorney's fees.

duce an award simply because the plaintiffs failed to prevail against some proportion of the defendants originally named in the suit. I would hold in part III.B. that the plaintiffs are entitled to the lodestar amount in this case.

The district court said that it reduced the attorney's fee award by 20% to adjust for the plaintiffs' "limited success." The plaintiffs argue that the district court abused its discretion by reducing the award. Defendant Brown appeals, arguing that the plaintiffs' purportedly limited success merited an even greater reduction in the fee award. I do not believe that the plaintiffs' success was limited. Therefore, I would clearly reject defendant Brown's appeal with regard to the issue of limited success. In addition, I would not, as the majority does in part III.B. of the opinion, invite the district court to exercise its discretion a second time. The parties agree that the district court properly calculated the lodestar figure, which is a presumptively reasonable amount for an award of attorney's fees. The plaintiffs are entitled to the lodestar amount.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983), the Supreme Court explained that district courts may sometimes reduce the lodestar amount when the plaintiffs, though prevailing parties, achieve only limited success in the litigation. When the unsuccessful claims are distinct in all respects from the successful claims, *Hensley* held that the time spent on the unsuccessful claims should not be compensated. 461 U.S. at 440, 103 S.Ct. at 1943. This is not such a case, as the claims here arise out of a single incident and a common core of facts. In such a case, *Hensley* made it clear that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* The Supreme court in *Hensley* did not authorize a reduction simply because some proportion of the defendants are not found liable. When considering whether plaintiffs' limited success merits an adjustment of the lodestar

figure, district courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435, 103 S.Ct. at 1940. Because the emphasis is on the reasonableness of the number of hours spent on the litigation, a reduction is not warranted unless the attorneys expended time that was not reasonably necessary to achieve success on the claims that were successful.

In this case, plaintiff sued forty-one defendants, prevailed against three, and won verdicts totaling $24,006. In *Rivera v. City of Riverside*, 763 F.2d 1580 (9th Cir. 1985), *aff'd*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), we upheld a fee award in very similar circumstances. In *Rivera*, which may be our earliest case applying *Hensley*, plaintiffs sued thirty-two defendants, including thirty individual officers. They prevailed against only six and won a verdict totaling $33,350. 477 U.S. at 564, 106 S.Ct. at 2689. We explained that the plaintiffs "succeeded on the most significant issue of the litigation—they proved that their civil rights had been violated by law enforcement officers." 763 F.2d at 1582. Similarly, in the case at bar, the significant issue was identical, and the plaintiffs successfully prevailed. In both cases, all the claims stemmed from a single incident and shared a common core of facts. Nothing in *Rivera* suggests that the plaintiffs' failure to prevail against twenty-five individual officers automatically justified a conclusion that plaintiffs' success was limited or that the lodestar figure should be reduced. On the contrary, we recognized that *Hensley* simply required the district court to inquire whether the hours expended were reasonable in light of the success obtained. In *Rivera* we upheld the district court's finding that it was reasonable for the attorneys to expend the time they did for the result they obtained.

Appellant Brown argues that plaintiffs' failure to prevail against most of the defendants requires the conclusion that plaintiffs' success was limited. This argument is foreclosed by our decision in *Rivera*, and neither the district court nor the majority opinion accept it. Nevertheless, the majori-

ty appears to adopt the position that the plaintiff's failure to prevail against most defendants is sufficient grounds, in itself, for a district court to conclude that plaintiff's success was limited. I disagree.

The majority relies on our decision in *Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir.1988). To the extent that *Cabrales* is in conflict with our earlier decision in *Rivera*, we must regard *Rivera* as controlling. The majority believes that *Cabrales* does not conflict with *Rivera*, arguing that together the cases stand for the proposition that a district court enjoys wide discretion in determining whether plaintiff's success was limited. Although I agree that district courts should have much discretion in evaluating plaintiff's success, I do not believe that they can evaluate plaintiff's success by simply comparing the number of defendants found liable to the number originally named in the lawsuit. To the extent that *Cabrales* stands for such a proposition, I believe that it violates the principles of the Supreme Court's decision in *Hensley*.

In *Cabrales*, the plaintiff sought to recover from the County, the Sheriff, and a host of deputies for the wrongful death of her son, who committed suicide in the county jail. The County was found liable for $150,000. I do not see how it can be said that the failure to prevail against most of the defendants demonstrates that plaintiff's success was limited. The plaintiff prevailed against the County for the full extent of the loss.[1] Even if every deputy had been found individually liable, plaintiff's recovery would have been the same. What does it matter that the jury let the individual deputies off the hook? The plaintiff's rights have been vindicated and the plaintiff will be paid in damages.

Under the facts of *Cabrales*, the only conceivably valid approach for reducing the award based on "limited success" would be to reason that a portion of the attorney's hours were not reasonably expended on the ultimate result of holding the county liable.

Yet no such reasoning can be found in the *Cabrales* case.

I believe the better approach is reflected in the Seventh Circuit's decision in *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983). That case was one of the earliest to apply the *Hensley* Court's discussion of limited success to a case in which the plaintiff prevailed against only some of the defendants. Because I believe the Seventh Circuit's discussion is particularly apt, I quote from it at length:

> [T]he award of attorney's fees for time expended in remedying illegal conduct should not turn on whether only some or all of the defendants named in connection with the conduct are ultimately held liable. *Hensley* clearly permits attorney's fees to be awarded for time spent relating to matters not "distinctly different" from those on which the plaintiff ultimately succeeds. When defendants are not named frivolously in connection with the same illegal conduct, it follows that the matters involving the different defendants will *always* be "related."

> . . . . .

> Although the Supreme Court in *Hensley* did not specifically address situations in which a plaintiff brings a claim against several defendants but obtains relief from only some of them, we have already observed that the Court's discussion of awards of attorney's fees is structured in terms of compensable "claims for *relief.*" This language suggests that all time spent in pursuit of relief for the same illegal conduct should be considered in awarding attorney's fees once the relief sought is obtained, regardless whether the plaintiff has succeeded in obtaining the relief from only some and not all of the defendants named in connection with that conduct. Once the relief sought is obtained, the plaintiff will have succeeded. It would therefore be illogical to define compensable "claims *for relief*" in terms of defendants, because once the plaintiff's claim succeeds against one de-

---

1. There is no suggestion in *Cabrales* that the size of the verdict constituted grounds for conclud-ing that plaintiff's success was limited.

fendant, the plaintiff will have achieved full relief for the illegal course of conduct notwithstanding the plaintiff's failure to obtain relief from each and every defendant. A recovery against more than one of the defendants will not enhance the amount of the damage award. We hold that when, as here, a plaintiff raises a claim for relief that relates to several defendants, not all of whom are held liable, the total time expended on the claim for relief should be counted in awarding the plaintiff attorney's fees so long as the defendants from whom plaintiff did not obtain relief were not named frivolously. In these circumstances, the total time expended on the claim can thus be said to have been "in pursuit of the ultimate result achieved" of obtaining relief on the claim, 103 S.Ct. at 1940, and it matters not that the plaintiff was unsuccessful as to some of the defendants. The plaintiff will have obtained *all* the relief sought in connection with the illegal conduct.

723 F.2d at 1280–81 (citation omitted). *Accord Cobb v. Miller,* 818 F.2d 1227, 1232–34 (5th Cir.1987). Because there is no suggestion that any of the defendants were named frivolously, the time spent litigating the successful claims should be compensated. The fact that plaintiff did not prevail against all defendants is not sufficient to support a conclusion that plaintiff's success was limited.

Our decision in *Rivera* is consistent with the well-reasoned approach of the Seventh Circuit's decision in *Mary Beth G.* I believe our decision in *Rivera* is dispositive. As in *Rivera,* the plaintiffs here were successful in the most important claim: their civil rights were violated. All the claims in this case were related. The defendants who escaped liability were present and were witnesses. Their depositions and testimony were required whether they were individually liable or not. The ultimate size of the monetary award is not grounds for reducing the fee award, unless the attorneys expended hours that were not reasonably necessary to achieving the success they achieved. Here, the district court apparently misunderstood the terms of the

Rule 68 offer and thus erroneously concluded that the attorneys' post-offer time did not further advance the plaintiffs' success. There is nothing else in the district court's order to suggest that the attorneys' time was not well spent. Because the district court's reasons for reducing the award were erroneous, and because the district judge identified nothing else in the record that would support a reduction in fees, there is no need to remand for the district court to exercise its discretion a second time. *See Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1278 (7th Cir.1983). The lodestar is the presumptively correct figure. This is not one of the rare occasions when it is proper to depart from the lodestar figure. We should therefore hold that the plaintiff is entitled to an attorney's fee equal to the lodestar amount.