**Cheri LANG; Henry Lang; Lillian D'Antignac, Plaintiffs,**

**and**

**Yagman & Yagman, P.C., Real-Party-in-Interest-Appellant,**

**v.**

**Daryl F. GATES, Chief of Police; Reva Tooley; Robert Talcott; Herbert F. Boeckmann, II, Defendants–Appellees.**

**No. 93–55185.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 1, 1994.

Decided Sept. 19, 1994.

---

Stephen Yagman, Yagman & Yagman, Venice, CA, for real-party-in-interest-appellant.

Lisa S. Berger, Deputy City Atty., Los Angeles, CA, for defendants-appellees.

Before O'SCANNLAIN and T.G. NELSON, Circuit Judges; MERHIGE,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a plaintiff who first rejects a settlement offer may recover postoffer attorney's fees when he later accepts the same offer.

I

In August 1988, Los Angeles police conducted a raid of Cheri and Henry Lang's South Central Los Angeles home. In response, the Langs filed suit against Los Angeles Police Chief Daryl Gates, the City of Los Angeles, and various individual Los Angeles police officers, city officials, and government employees under 42 U.S.C. § 1983.

Prior to trial, defendants made an offer of settlement for $600,000 plus reasonable attorney's fees and costs incurred, pursuant to Federal Rule of Civil Procedure 68. The offer stated that "[a]cceptance by less than both Plaintiffs shall be deemed a rejection of this offer." Cheri Lang accepted the offer and Henry Lang rejected it.

Over nine months later, the district court approved a settlement between the parties in the amount of $600,000 plus attorney's fees to be determined at a later date. As part of the settlement the Langs dismissed the action with prejudice.

The Langs' attorney, Stephen Yagman ("Yagman"), then filed a motion for attorney's fees in the amount of $1,288,275. Reducing Yagman's billable hours and hourly rate, the district court awarded him $247,368 in fees. Specifically, the district court also held that Yagman was "not entitled to recover attorney's fees incurred after defendants' Rule 68 offer." Yagman appeals this latter ruling.

II

Rule 68 provides that, if a timely pretrial offer of settlement is not accepted

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The principal purpose of the Rule is to encourage settlement and to avoid litigation. Advisory Committee Note on Rules of Civil Procedure, Report of Proposed Amendments, 5 F.R.D. 433 (1946); *Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 3014–15, 87 L.Ed.2d 1 (1985); *Erdman v. Cochise County*, 926 F.2d 877, 880 (9th Cir.1991). This case requires us to decide whether defendants' offer qualifies under Rule 68, and whether Rule 68 applies to cases terminated pursuant to settlement.

### A

■ Yagman contends that defense offers conditioned upon the acceptance of multiple plaintiffs are invalid under Rule 68. Such offers, he argues, are impossible for individual plaintiffs to accept and thus constitute a legal nullity. Consequently, he concludes, Rule 68 does not apply where one plaintiff attempted to accept such a conditional offer, but was unable to do so because the other plaintiff rejected it.

The question seems to be one of first impression in this circuit, and indeed, in the country. *See Corder v. Gates*, 688 F.Supp. 1418 (C.D.Cal.1988), *aff'd in part, rev'd in part*, 947 F.2d 374 (9th Cir.1991). Yagman offers no authority except *Corder* which expressly declined to decide it. *Id.* at 1421 n. 3. We must reject his argument.

In determining whether an offer is proper under Rule 68, courts will apply traditional principles of contract construction. *Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir.1993). Conditional offers have long been recognized as valid under such principles. Restatement (Second) of Contracts, § 29 cmt. a ("The offeror is the master of his offer.... [He] is entitled to insist on a particular mode of manifestation of assent.").

We see no reason to depart from these principles here.

Moreover, we are concerned that to require that plaintiffs be allowed to accept or to reject joint offers individually "might encourage multiple plaintiffs to hedge their bets by collusively having at least one party accept the offer and at least one other decline. That way they could both benefit if the judgment is greater than the offer, and could both avoid incurring costs and loosing [sic] attorney's fees if it is less." *Corder*, 688 F.Supp. at 1421 n. 3. Because joint offers will most often be made where plaintiffs have a common interest, the risk of collusion is great.

While collusion has not been established in this case, we are concerned by the curious pattern of vote-switching between the Langs. The defendants made several Rule 68 offers before the Langs ultimately settled. Henry Lang accepted defendants' first offer, while Cheri Lang adamantly rejected it.[1] After the city attorney challenged Henry Lang's standing to bring suit, however, Cheri Lang accepted all subsequent Rule 68 offers, and Henry Lang rejected them. Given these facts, it would not be unreasonable to conclude that plaintiffs were attempting to do exactly what the district court in *Corder* feared—positioning each other to avoid the potential consequences of rejecting a Rule 68 offer.

An offer not accepted on its terms is rejected. We see no reason why a defense offer conditioned upon joint acceptance by both plaintiffs should not qualify for Rule 68 treatment.

### B

■ The second question is whether the term "judgment" as used in Rule 68 includes the termination of litigation pursuant to settlement. As noted, Rule 68 prevents a plaintiff who has rejected a Rule 68 offer from recovering attorney's fees "where the *judgment* finally obtained ... is not more favor-

---

1. Cheri Lang's rejection read: "Cheri Lang hereby rejects defendants' Rule 68 offer because it is imperative that the police defendants in this action who acted like totalitarians and their supervisors, who made that conduct possible, and who continue to condone that conduct, be brought to justice before a jury and in public so that there will be some small chance that these malefactors will not engage in this sort of outrageous conduct again. These people must be deterred, and a settlement will have no deterrent value."

able than the offer." Fed.R.Civ.P. 68 (emphasis added). Yagman contends that this portion of the Rule applies only to those cases concluded by trial on the merits, and has no bearing on cases resolved by subsequent settlement. We reject this contention.

First of all, settlement in this case resulted in an order of dismissal with prejudice which, if not in form a judgment for defendants, is certainly one in substance. Further, the primary purpose of Rule 68 is to encourage settlements, and it should be construed with this objective in mind. *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 3014–15, 87 L.Ed.2d 1 (1985). Implicit in this purpose is the desire to deter a plaintiff's attorney from rejecting reasonable settlement offers and instead pursuing extended negotiations and litigation, in the hope of accumulating fees. *Marek,* 473 U.S. at 11, 105 S.Ct. at 3017–18.

The application of Rule 68 to cases resolved by subsequent settlement fulfills these ends by encouraging plaintiffs, defendants, and their attorneys to settle. From a plaintiff's perspective, such an application of Rule 68 means that plaintiffs who fail to accept an initial reasonable offer will not recoup attorney's fees if the case is settled by a later offer of lesser or equivalent value. This result "will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile [and] that is precisely what Rule 68 contemplates."[2] *Marek,* 473 U.S. at 10, 105 S.Ct. at 3017. In contrast, the narrow reading that Yagman proposes will frustrate the objectives of Rule 68. A plaintiff who is free to accept successive settlement offers has little incentive to consider carefully an initial offer, despite that offer's reasonableness.

To adopt Yagman's suggested interpretation of Rule 68 would similarly discourage defendants from settling. Defendants whose initial fair offer has been rejected will not make the same offer again if to do so would render them liable for plaintiff's attorney's fees. Rather, such defendants would take their chances at trial, in the hope of obtaining an equal or lesser judgment and thereby avoiding fees. But by interpreting the term "judgment" broadly to encompass termination of litigation resolved by subsequent settlement, defendants would be encouraged to renew their initial offer as the case proceeds to trial, without fear of liability for attorney's fees accrued during the interim.

Finally, and perhaps most seriously, Yagman's reading of the Rule would allow a plaintiff's counsel to encourage rejection of a Rule 68 offer, prolong settlement negotiations while accumulating fees, and then have the client accept the same offer—or one of lesser value—at a later date, earning significantly more in attorney's fees through the delay, although plaintiff himself would gain nothing. Such a result would contradict the intent of Rule 68 to facilitate settlement and to ensure that plaintiff has received "monetary benefits from the postoffer services of his attorney." *Marek,* 473 U.S. at 11, 105 S.Ct. at 3017. By contrast, applying Rule 68 to cases resolved by settlement will serve as a disincentive for plaintiff's attorney to recommend continued litigation needlessly after defendant has made a reasonable settlement offer.

Unlike our holding today, several district courts have concluded that Rule 68 does not apply in those cases terminated by settlement. *Good Timez v. Phoenix Fire and Marine Ins. Co.,* 754 F.Supp. 459, 462–63 (D.Virgin Islands 1991); *Hutchison v. Wells,* 719 F.Supp. 1435, 1443 (S.D.Ind.1989); *EEOC v. Hamilton Standard Div.,* 637 F.Supp. 1155, 1158 (D.Conn.1986).[3] In reaching such conclusion, the district courts reasoned that if plaintiffs were prevented from recouping attorney's fees following subsequent settlement, "it would provide a disincentive for attorneys to accept settlements

---

**2.** Note, however, that our reading of Rule 68 does not force a plaintiff to accept *any* initial offer made by the defendant. Rather, plaintiffs are encouraged only to accept those offers where the likelihood of obtaining more at a later date is low. If the defendant's offer is unreasonable, and the plaintiff is relatively certain that he can obtain a larger recovery through continued negotiation or after trial, he wisely will reject such an offer.

**3.** At least one district court has suggested that Rule 68 does apply to settlements. *Boorstein v. City of New York,* 107 F.R.D. 31, 33 (S.D.N.Y. 1985) ("If the judgment *or settlement* ultimately obtained by plaintiff is less than the Rule 68 offer, plaintiff cannot recover attorneys' fees or costs from the date the offer was made to the end of the suit.") (emphasis added).

once an initial settlement was rejected." *Hutchison,* 719 F.Supp. at 1443. Such reasoning is incomplete, however. The application of Rule 68 to cases like the one before us provides a disincentive for attorneys to recommend accepting *lesser or equivalent* settlements once an initial settlement has been rejected. Yet this is exactly as it should be. Rule 68 seeks not to encourage plaintiffs to accept equal or lesser offers at a later date, but rather is intended to encourage plaintiffs to consider carefully and seriously a reasonable offer when made. To discourage parties from doing so does not benefit plaintiffs; indeed, such delay benefits only a plaintiff's attorney.

To preserve and to promote the purposes of Rule 68, the phrase "judgment finally obtained" certainly would encompass an order finally terminating the litigation as a result of settlement.

### III

Postoffer attorney's fees were properly denied in this case.

AFFIRMED.