Susan **LINTZ** and Connie
Diecidue, Plaintiffs,

v.

**AMERICAN GENERAL FINANCE,
INC. and MorEquity,**
Defendants.

No. 98–2213–JWL.

United States District Court,
D. Kansas.

Nov. 24, 1999.

---

Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, Gabrielle Rhodes, Brown & Nachman, P.C., Kansas City, MO, for Susan Lintz, plaintiff.

Michael P. Oliver, Chris R. Pace, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Connie Diecidue, plaintiff.

Lisa White Hardwick, Carole K. DeWald, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs Susan Lintz and Connie Diecidue filed suit against defendants alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq. Following a trial on plaintiffs' claims, the jury found that both plaintiffs were subjected to sexual harassment and further found that defendants were liable to plaintiffs for the harassment. The jury awarded no damages to plaintiff Lintz and awarded plaintiff Diecidue $25,000 in compensatory damages. Although the issue of punitive damages was submitted to the jury, the jury declined to award punitive damages to either plaintiff.

This matter is presently before the court on various post-trial motions, including plaintiff Lintz's motion to alter or amend judgment or, in the alternative, for new trial on damages (doc. # 210); plaintiff Lintz's motion to award statutory attorney's fees and non-taxable expenses (doc. # 211); and defendants' motion for costs, including attorneys' fees, pursuant to Federal Rules of Civil Procedure 54 and 68 (doc. # 219).[1] As set forth in more detail below, all of the motions are denied.

1. One additional motion is currently pending before the court—plaintiff Connie Diecidue's motion to award statutory attorney's fees and non-taxable expenses (doc. # 214). Because this motion is not yet ripe, the court will address Ms. Diecidue's motion at some future date.

2. Plaintiff Diecidue joins in the motion filed by plaintiff Lintz and simply incorporates by

## I. Motion to Alter or Amend or for New Trial

Plaintiff Lintz moves the court to alter or amend the judgment (by awarding plaintiff monetary damages) or, in the alternative, for a new trial limited to the issue of damages.[2] In support of her motion, plaintiff Lintz contends that the jury's failure to award compensatory damages is against the weight of the evidence and is inconsistent with the jury's finding of liability. She also maintains that the jury's failure to award punitive damages was the result of prejudicial juror misconduct. Defendants, not surprisingly, assert that the evidence supports the jury's decision to award no compensatory damages and that the decision is not inconsistent with its liability finding. Defendants further maintain that any juror misconduct is harmless. As set forth in more detail below, the court rejects each of plaintiff's arguments and, accordingly, denies plaintiff's motion in its entirety.[3]

### A. Plaintiff's Request for Additur

■ As an initial matter, plaintiff Lintz requests the court award her monetary damages, although she fails to specify the amount of damages she believes is appropriate. In essence, plaintiff wants the court to give defendants the option of either accepting an additur or having a new trial on the issue of plaintiff's damages. Plaintiff cites no authority in support of her proposal. She simply reasons that because courts routinely give plaintiffs the option of accepting a remittitur or facing a new trial, the same principle should apply to additur. As defendants highlight, however, the Supreme Court's decision in *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct.

reference the arguments and authorities set forth by Ms. Lintz.

3. Because the court denies on the merits plaintiff's motion for a new trial, the court need not address whether a new trial on the issue of damages only (as opposed to liability and damages) would be appropriate in this context.

296, 79 L.Ed. 603 (1935), has foreclosed the issue. There, the Supreme Court determined that additur cannot be used in the federal courts because it involves an unconstitutional reexamination of the jury's verdict in violation of the Seventh Amendment:

> [T]he power to conditionally increase the verdict of a jury does not follow as a necessary corollary from the power to conditionally decrease it.... [I]n the case of a conditional remittitur, a jury has already awarded a sum in excess of that fixed by the court as a basis for remittitur, ... while in the second case, no jury has ever passed on the increased amount ...

*Dimick,* 293 U.S. at 485, 55 S.Ct. 296; *accord Lyon Dev. Co. v. Business Men's Assurance Co. of Am.,* 76 F.3d 1118, 1125 (10th Cir.1996). Plaintiff's request that the court require defendants to choose either a court-increased verdict or a new trial is denied.[4]

### B. Plaintiff's Request for New Trial on Compensatory Damages

■ As an alternative to additur, plaintiff requests a new trial on the issue of compensatory damages. According to plaintiff, the jury's failure to award any compensatory damages is against the weight of the evidence and is inconsistent with its finding of liability. In support of her argument, plaintiff contends that she offered at trial substantial and corroborated evidence of emotional harm she suffered based on Scot Johansen's harassing conduct.[5] Plaintiff further contends that this evidence was unrefuted by defendants. As defendants emphasize, however, the question is not whether plaintiff presented sufficient evidence from which the jury could have awarded compensatory damages, but whether the record supports the jury's award of no damages. *See Bennett v. Longacre,* 774 F.2d 1024, 1028 (10th Cir.1985) (jury's damage award "can be supported by any competent evidence tending to sustain it"). As set forth below, the court concludes that the evidence presented at trial is more than sufficient to support the jury's decision to award no compensatory damages and that the award is not inconsistent with the jury's finding of liability.

■ Commensurate with the jury's fact-finding function, it is a well-settled principle that "the jury, which has the first-hand opportunity to hear testimony and observe the demeanor of witnesses, has discretion to fix damages." *See Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1300 (10th Cir.1998). For this reason, a jury's award of damages will not be disturbed unless the award is so unreasonable "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *Id.* at 1300–01. In other words, the mere fact that plaintiff presented substantial and corroborated evidence of emotional

---

4. In passing, plaintiff Lintz maintains that she is entitled, at the very least, to an award of nominal damages. The court disagrees. Although there are some circumstances in which a court is obligated to award nominal damages, *see, e.g., Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (court is obligated to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury), this is not one of them. In support of her request, plaintiff relies only on the Tenth Circuit's opinion in *Derr v. Gulf Oil Corp.,* 796 F.2d 340 (10th Cir.1986). *Derr* involved a gender discrimination claim brought prior to the enactment of the Civil Rights Act of 1991 and, thus, is not entirely helpful in analyzing a jury's compensatory damage award under Title VII. In any event, a careful reading of *Derr* reveals that the Circuit simply assumed—in the context of an analysis of whether plaintiff was a "prevailing party" for purposes of awarding fees under 42 U.S.C. § 2000e–5(k)—that plaintiff would be entitled to nominal damages. *See Derr,* 796 F.2d at 344. The Circuit clearly did not hold that nominal damages must be awarded in a Title VII case. In the absence of any additional authority or argument from plaintiff on this issue, the court declines her request for an award of nominal damages.

5. Mr. Johansen was plaintiff's immediate supervisor during her employment with defendants.

distress does not require the jury to conclude that plaintiff in fact suffered emotional distress. A jury is not required to believe the testimony of any witness, regardless of whether that testimony is uncontroverted.

Here, substantial evidence was introduced at trial to support the jury's award of no compensatory damages. Although plaintiff testified to suffering emotional distress based on the conduct of Mr. Johansen, the jury could have believed otherwise. Plaintiff testified, for example, that she was not looking for another job when she was approached by Long Beach Mortgage. When she completed the job application for Long Beach, she indicated that she was not available to begin work for almost one month. In fact, she advised defendants that she was quitting her job three weeks before she actually left her employment. During that three-week period, she continued to work with Mr. Johansen. Based on this evidence, the jury could have reasonably concluded that plaintiff was in no hurry to leave her job with defendants. More specifically, the jury could have reasonably concluded that plaintiff, because she agreed to continue working with Mr. Johansen on a daily basis even when presented with an opportunity to leave, had not actually suffered any emotional distress as a result of his conduct.

Evidence was also presented that plaintiff, after she began working for Long Beach, returned to the MorEquity office to visit with her former coworkers and Mr. Johansen. Plaintiff testified that she visited with Mr. Johansen in the MorEquity office at least four times after she resigned. In fact, she sought his assistance in finding another job when she became dissatisfied with her job at Long Beach. Moreover, plaintiff testified that she invited Mr. Johansen and his family to her wedding—approximately five to six weeks after she resigned her employment with defendants. She even contacted Mr. Johansen prior to the wedding to inquire whether he planned to attend. Finally, defendants presented substantial evidence

that plaintiff, both during and after her employment with defendants, acted "friendly" and "flirtatiously" toward Mr. Johansen.

Based on all of this evidence, the jury could have reasonably concluded that plaintiff did not suffer any emotional harm as a result of Mr. Johansen's conduct, even if that conduct, at some point, "crossed the line" with plaintiff in terms of welcomeness. Moreover, the court's instructions to the jury did not require the jury to award compensatory damages. Instruction No. 18 provided, in pertinent part, that plaintiff "may" recover compensatory damages and that the damages "if any" the jury decided to award must be fair compensation. Similarly, the verdict form asked the jury to determine what damages "if any" plaintiff suffered as a result of the sexual harassment to which she was subjected. Plaintiff did not object to any of the court's instructions or the verdict form.

After careful consideration of the parties' papers and the evidence presented at trial, the court concludes that the jury's verdict is not inconsistent and is supported by the evidence. Plaintiff's motion for a new trial on compensatory damages is denied.

## C. Plaintiff's Request for New Trial on Punitive Damages

Finally, plaintiff requests a new trial on the issue of punitive damages in light of evidence that two jurors, during a break in the jury's deliberations, consulted a dictionary for definitions of the terms "malice" and "reckless" as used in the court's instruction on punitive damages. At a minimum, plaintiff contends that an evidentiary hearing is necessary to establish the nature and extent of the jury's exposure to this external information. Plaintiff also contends that the jury's failure to award punitive damages in the face of "strong" evidence of malice suggests that members of the jury failed to reveal certain bias or prejudice during the voir dire process. Thus, at the evidentiary hearing mentioned above, plaintiff's counsel desires to

ask jury members about their alleged failure to disclose bias or prejudice during voir dire. As set forth in more detail below, the court concludes that neither an evidentiary hearing nor a new trial is warranted under the circumstances presented here. Thus, plaintiff's requests are denied.

During deliberations, the jury submitted a written request that the court define the terms "malice" and "reckless" (both terms were used in the court's punitive damage instruction) in "lay" terms. After consulting with counsel, the court declined to define these terms further and simply referred the jury to the instructions already provided. Almost immediately, the jury submitted a written request for a dictionary. Because defendants' counsel objected, the jury was not provided with a dictionary.[6] Shortly thereafter, the jury recessed for the weekend. On Monday morning, the jury returned its verdict and awarded no punitive damages. Additional facts about the jury's deliberations have come to light since that time.[7] Specifically, two jurors returned to the courthouse on Monday morning and revealed to the jury foreperson that they had consulted a dictionary over the weekend for definitions of the terms "malice" and "reckless." According to the foreperson, he then cautioned these jurors that they could not share the dictionary definitions with other jurors.

■ The court first addresses plaintiff's request for an evidentiary hearing. *See United States v. Davis,* 60 F.3d 1479, 1483 (10th Cir.1995) (in analyzing claims of juror misconduct, district judge must first make initial determination of whether hearing is necessary). Whether to hold an evidentiary hearing is entirely within the court's discretion. *See id.* According to

plaintiff, an evidentiary hearing is necessary to determine what dictionaries the two jurors used (and, thus, what definitions were obtained); whether the definitions were discussed with any other jurors; and whether the two jurors exercised "undue influence" over the rest of the jury because they had garnered "special knowledge" as to the meaning of the terms. Because an evidentiary hearing will not assist the court in analyzing plaintiff's claim of juror misconduct, plaintiff's request for a hearing is denied.

■ Under Federal Rule of Evidence 606(b), a juror may testify as to whether extraneous prejudicial information was improperly brought to the jury's attention, but may not testify as to the effect of that information on the juror's mental processes. *Id.* at 1482–83. The record before the court establishes that two jurors consulted a dictionary for definitions of the terms "malice" and "reckless." Indeed, the parties have so stipulated. As set forth below, identification of the particular dictionaries used by the two jurors would not change the court's conclusion that the jurors' use of a dictionary—in the circumstances presented here—was harmless. Moreover, there is no evidence or allegation that any other juror engaged in similar conduct. Similarly, there is no evidence (direct or circumstantial) that these two jurors shared the information they obtained with any of the other jury members.[8] Thus, to hold an evidentiary hearing on the nature and extent of the misconduct at issue would be redundant and unnecessary. *See id.* at 1484. Thus, because neither the court nor the parties could inquire as to the effect of the information obtained by the two jurors, conducting a hearing would simply be an exercise in futility. *See id.* at 1483.[9]

---

6. Plaintiffs' counsel did not object to the jury's request.

7. The parties have stipulated to these additional facts.

8. In any event, as discussed below, even if the two jurors had shared the dictionary definitions with other members of the jury, the court would still find such conduct harmless.

9. Moreover, plaintiff's desire to ask jury members about their alleged failure to disclose prejudice or bias during the voir dire process is based on sheer speculation. Plaintiff is not entitled to a hearing on this basis.

Having concluded that a hearing will not assist the court in resolving plaintiff's claim of juror misconduct, the court next determines whether any exposure to the extraneous information impermissibly tainted the jurors so as to warrant a new trial. *See Davis,* 60 F.3d at 1484 (regardless of whether a hearing is held, district judge must still determine whether exposure to extraneous information warrants new trial).

■■■ It is well settled that a jury's exposure to extrinsic information gives rise to a rebuttable presumption of prejudice. *See Mayhue v. St. Francis Hosp. of Wichita, Inc.,* 969 F.2d 919, 922 (10th Cir.1992). As the Tenth Circuit has recognized, however, a trial court "will rarely be able to ascertain the actual prejudicial impact of a jury's exposure to external influences because a jury cannot testify regarding the subjective effect of such influences during a Rule 606(b) hearing." *See id.* at 923. Therefore, the court must confirm or rebut the presumption of prejudice by objectively weighing all of the facts and circumstances of the case. *Id.* at 923–24. In that regard, the Circuit has cited a number of factors relevant to determining whether the presumption of prejudice has been rebutted when a jury consults a dictionary without authorization. *See id.* at 924. They are as follows:

(1) The importance of the word or phrase being defined to the resolution of the case.

(2) The extent to which the dictionary definition differs from the jury instructions or from the proper legal definition.

(3) The extent to which the jury discussed and emphasized the definition.

(4) The strength of the evidence and whether the jury had difficulty reaching a verdict prior to introduction of the dictionary definition.

(5) Any other factors that relate to a determination of prejudice.

*Id.* Applying these factors to the circumstances presented here, the court concludes that a new trial is not warranted.

With respect to the first factor, the terms "malice" and "reckless" are important to the resolution of the punitive damages issue. Nonetheless, the terms are words of common usage and common knowledge. Moreover, a review of the definitions found in several dictionaries reveals that the "dictionary definitions" of the terms comport with both the "legal definitions" of the terms and the commonly understood meaning of the terms. For example, Webster's Third New International Dictionary includes the following definitions of "malice": intention or desire to harm another usu. [sic] seriously through doing something unlawful or otherwise unjustified; willfulness in the commission of a wrong; evil intention. Webster's Third New International Dictionary 1367 (1986). Similarly, the American Heritage Dictionary defines "malice" as follows: A desire to harm others or to see others suffer; the intent, without just cause or reason, to commit an unlawful act that will result in injury to another or others. American Heritage Dictionary 759 (2d College ed.1985). "Reckless" is defined in Webster's as lacking in caution; deliberately courting danger; foolhardy, rash; careless, neglectful, thoughtless; marked by a lack of foresight or consideration. Webster's Third New International Dictionary 1896 (1986). The American Heritage Dictionary includes the following definitions of "reckless": heedless or careless; headstrong; rash; having no regard for consequences; wild. American Heritage Dictionary 1033 (2d College ed.1985).

From the court's perspective, none of these dictionary definitions differs from what one would commonly understand the words to mean. Moreover, plaintiff does not suggest that any dictionary definition of these words is more demanding than any legal definition that might be appropriate.[10] Thus, to the extent any of the

---

**10.** The court's instructions did not define "malice" or "reckless."

jurors determined that defendants failed to act with "malice" or "reckless" indifference under those terms' dictionary definitions, they also determined that defendants failed to act with "malice" or "reckless" indifference under the commonly understood meaning of those terms. In sum, the second factor set forth by the Circuit in *Mayhue* weighs heavily in favor of a finding that plaintiff was not prejudiced by the jurors' unauthorized use of a dictionary. *Compare Mayhue,* 969 F.2d at 925 (where jury had looked up dictionary definitions of "discriminate" and "prejudice" in race discrimination case, district court's decision to grant new trial was proper in part because dictionary definitions were inaccurate and incomplete) *with United States v. Aguirre,* 108 F.3d 1284, 1289 (10th Cir.1997) (no prejudice to criminal defendant by juror's referring to dictionary for definition of "distribute"; dictionary definition did not differ from legal definition) *and Chums, Ltd. v. Snugz/USA, Inc.,* 64 F.3d 669, 1995 WL 503975, at *3 (10th Cir.1995) (no prejudice by juror's referring to dictionary for definition of "likelihood" where definition comported with common-sense meaning).

Moreover, there is no evidence that the dictionary definitions of the words were shared with other jury members or that the two jurors who consulted a dictionary attached any significance to the definitions found there. Although a paralegal working for plaintiff's counsel questioned the jury foreperson about the use of a dictionary, plaintiff's counsel has not alleged that the dictionary definitions were shared with the foreperson or any of the other jurors. In fact, the foreperson advised the paralegal that he had specifically told the two jurors that they could not share the information with anyone else. Plaintiff's counsel does not suggest that the jurors failed to heed the foreperson's instruction. Thus, this factor weighs in favor of a finding that the impropriety of the two jurors was harmless. *Compare Mayhue,* 969 F.2d at 925 (affirming district court's decision to grant new trial where foreperson obtained dictionary definitions of "critical"

words and read them aloud to entire jury) *with Aguirre,* 108 F.3d at 1289 (no prejudice to criminal defendant despite the fact that juror shared dictionary definition of "distribute" with entire jury where the record did not indicate that any of the jurors attached any significance to the definition) *and Chums,* 64 F.3d 669, 1995 WL 503975, at *3 (no prejudice where only one juror had seen dictionary).

There was also substantial evidence before the jury to support its finding that punitive damages were inappropriate. Although the jury was instructed that it could award punitive damages if it found that defendants "acted with malice or reckless indifference" to plaintiff's federally protected right to work in an environment free from sexual harassment, the jury was further instructed that it could not award punitive damages if it found that defendants "made good faith efforts to comply with Title VII and to prevent and promptly correct any sexually harassing behavior, and that Scot Johansen acted contrary to those efforts." *See Kolstad v. American Dental Ass'n,* 527 U.S. 526, ——, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999).

In support of their "good faith" defense, defendants introduced evidence through several management employees that plaintiff Lintz never complained about sexual harassment in the workplace until after she resigned her employment. Although Ms. Lintz testified that she did report the harassment, the jury assessed the credibility of all witnesses. Based on the testimony of defendants' witnesses, the jury could have concluded, in determining whether to award punitive damages, that Ms. Lintz never reported sexual harassment to any of defendants' management-level employees. In addition, defendants presented evidence that they acted promptly and appropriately in the face of plaintiff Diecidue's complaints about sexual harassment. In that regard, the undisputed evidence at trial demonstrated that Ms. Diecidue did not complain about sexual harassment un-

til after she resigned. Defendants' evidence demonstrated that defendants began an immediate investigation into Ms. Diecidue's allegations of sexual harassment as soon as those allegations were discovered in her exit questionnaire. According to several witnesses, the investigation included interviews of employees and the removal of Mr. Johansen from the workplace. Ultimately, defendants terminated the employment of Mr. Johansen based on Ms. Diecidue's complaints. In short, there was ample evidence before the jury to support its finding that punitive damages were not warranted here.[11]

Finally, aside from its request for the two definitions and its subsequent request for a dictionary, there is no evidence that the jury was deadlocked on the punitive damages issue or had difficulty reaching a verdict with respect to punitive damages prior to the two jurors' use of a dictionary. Moreover, in the absence of any additional evidence, the court does not believe that the jury's two inquiries regarding the punitive damages instruction are sufficient to draw an inference that the jury was having difficulty reaching a verdict on the punitive damages issue. The jury's deliberations lasted just over a full day.[12] In that time, it had to resolve a myriad of factual questions concerning the sexual harassment claims of two plaintiffs, including complex liability determinations in the wake of the Supreme Court's decisions in *Faragher* and *Burlington Industries*. The jury also had to resolve issues of compensatory and punitive damages for both plaintiffs. The jury never indicated it was having difficulty reaching a verdict on any issues and nothing in the duration or manner of the deliberations remotely suggests that it was having any difficulty prior to Monday morning, when the two jurors returned to the courthouse after having consulted a dictionary over the weekend. *Compare*

*Mayhue*, 969 F.2d at 926 (affirming district court's decision to grant new trial where foreperson shared dictionary definitions of "critical" words to entire jury after the jury had twice reported that it was deadlocked by "irreconcilable differences" and then jury reached a verdict within three hours after foreperson read definitions) *with Aguirre*, 108 F.3d at 1290 (no prejudice to criminal defendant despite jury having consulted dictionary for definition of "distribute" where there was no evidence that the jury was having any difficulty reaching a verdict prior to the introduction of the definition).

In sum, the facts and circumstances presented here demonstrate that the unauthorized use of a dictionary by two jurors was harmless to plaintiff and the presumption of prejudice has been rebutted. Plaintiff's motion for a new trial on punitive damages is denied.

## II. Plaintiff Lintz's Motion for Attorneys' Fees

■ Plaintiff Lintz moves the court for an award of attorneys' fees and costs based on her alleged prevailing party status in this action. *See* 42 U.S.C. § 2000e–5(k). As described above, the jury found that plaintiff Lintz was subjected to sexual harassment in the workplace and also found that defendants were liable to plaintiff for the harassing conduct. The jury, however, awarded her no damages. Nonetheless, plaintiff Lintz contends she is a prevailing party entitled to an award of attorneys' fees under Title VII. *See id.* Defendants contend that plaintiff is not entitled to any fee award because she is not a prevailing party. As set forth in more detail below, the court agrees with defendants that plaintiff Lintz is not a prevailing party for purposes of Title VII's

---

11. In addition, the jury's decision that punitive damages were not warranted is consistent with its decision that plaintiff Lintz was not entitled to any compensatory damages and that plaintiff Diecidue was entitled to only a relatively small compensatory damages award.

12. The questions about "malice" and "reckless" were submitted after a full day of deliberations.

attorneys' fees provision. Plaintiff's motion is denied.

■ It is well settled that a civil rights plaintiff, to qualify as a prevailing party, must obtain at least some relief on the merits of her claim. *See Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In other words, the plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. *Id.* (citations omitted). Moreover, whatever relief the plaintiff obtains must directly benefit her at the time of the judgment or settlement. *Id.* Otherwise, the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Id.* (quoting *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988)). In essence, a plaintiff "prevails" when actual relief on the merits of her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Id.* at 112, 113 S.Ct. 566.

Judge VanBebber of this district has applied the Supreme Court's decision in *Farrar* to nearly identical facts. *See Caruthers v. Proctor & Gamble Mfg. Co.,* 177 F.R.D. 667 (D.Kan.1998). In *Caruthers,* plaintiff filed suit against his former employer alleging, *inter alia,* violations of the Americans with Disabilities Act. *See id.* at 668. Following a trial, the jury returned a verdict finding that defendant had retaliated against plaintiff in violation of the ADA but that plaintiff had sustained no damages as a result of the unlawful retaliation. *Id.* The court "echoed this sentiment" in its post-trial order denying the plaintiff all requested equitable relief. *Id.* at 669.

Nonetheless, the plaintiff maintained that he was a "prevailing party" entitled to attorneys' fees because the jury's verdict "furthered the statutory purpose of vindicating important civil rights." *See id.* Judge VanBebber rejected plaintiff's argument and his request for attorneys' fees, noting that the jury's finding of liability did nothing more than affirm existing laws prohibiting retaliation. *See id.* at 670. In that vein, the court contrasted plaintiff's "victory" with the victories of other plaintiffs who were entitled to prevailing party status:

> [P]laintiff's victory had no significant implications in establishing the parameters of civil rights of similarly situated individuals. Unlike the prevailing parties in *Phelps v. Hamilton,* 120 F.3d 1126 (10th Cir.1997) and *Koopman v. Water Dist. No. 1,* 41 F.3d 1417 (10th Cir.1994), each of whom received either nominal damages or equitable relief and whose cases clarified the scope of constitutional rights in previously unchartered territories, plaintiff's lawsuit merely reaffirmed the well-established principle that employers may not retaliate against individuals engaging in protected conduct.

*See id.* at 669–70. In short, Judge Van-Bebber concluded that the plaintiff's "complete failure to obtain relief under such circumstances render[ed] his 'victory' a technical and insignificant achievement, ineligible for an attorney fee award." *See id.* at 669. Relying on the Supreme Court's decision in *Farrar,* the Tenth Circuit affirmed Judge VanBebber's decision. *See Caruthers v. Proctor & Gamble Mfg. Co.,* 161 F.3d 17, 1998 WL 694476, at *3 (10th Cir.1998).

In support of her motion for attorneys' fees, plaintiff Lintz relies primarily on the Tenth Circuit's recent decision in *Brandau v. State of Kansas,* 168 F.3d 1179 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 1808, 143 L.Ed.2d 1012 (1999). In *Brandau,* the plaintiff filed suit against the State of Kansas alleging sexual harassment, constructive discharge and retaliation under Title VII. 168 F.3d at 1180. The plaintiff prevailed on her sexual harassment claim, and the jury awarded her nominal damages of one dollar. *Id.* at 1181. The district court determined that plaintiff was a prevailing party and awarded plaintiff approximately $41,000 in attorneys' fees and expenses under 42 U.S.C.

§ 2000e–5(k). *Id.* Looking to the Supreme Court's decision in *Farrar*, the Tenth Circuit affirmed the district court's decision. *See id.* at 1183.

Plaintiff's reliance on *Brandau* is misplaced. In *Brandau*, the Circuit did not address whether plaintiff was a "prevailing party" for purposes of the attorneys' fees provision of Title VII. Because the jury awarded the plaintiff one dollar on her sexual harassment claim, *Farrar* mandated the conclusion that she was a "prevailing party" entitled to move for an award of attorneys' fees. As the Supreme Court explained in *Farrar*:

> No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree or settlement against the defendant. A plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay. As a result, the Court of Appeals for the Fifth Circuit erred in holding that petitioners' nominal damages award failed to render them prevailing parties.

506 U.S. at 113, 113 S.Ct. 566. Thus, the issue before the Circuit in *Brandau* was not whether plaintiff was a prevailing party, but whether the amount of the attorneys' fee award was reasonable.

The Tenth Circuit's opinions in *Brandau* and *Caruthers*, when read in light of the Supreme Court's opinion in *Farrar*, demonstrate that the distinction between an award of nominal damages and an award of no damages is significant. An award of nominal damages renders the plaintiff a prevailing party entitled to move for an award of attorneys' fees. *See Farrar*, 506 U.S. at 113, 113 S.Ct. 566. An award of zero damages does not render the plaintiff a prevailing party. *See Caruthers*, 161 F.3d 17, 1998 WL 694476, at *3 ("A judicial pronouncement that the defendant has violated the [law] ... unaccompanied by an enforceable judgment on the merits does not render the plaintiff a prevailing party.") (quoting *Pedigo v. P.A.M. Transport, Inc.*, 98 F.3d 396, 398 (8th Cir.1996)).

In other words, there has been no material alteration in the relationship between the parties here. Plaintiff received no monetary damages—the only form of relief she requested. In essence, then, defendants owe plaintiff nothing. Standing alone, any moral satisfaction plaintiff may have received from her technical victory cannot bestow prevailing party status. *See Farrar*, 506 U.S. at 112, 113 S.Ct. 566. In sum, plaintiff's failure to obtain any relief renders her ineligible for "prevailing party" status and ineligible for an award of attorneys' fees. Plaintiff's motion is denied in its entirety.

## III.  Defendants' Motion for Costs[13]

Prior to trial, defendants offered to allow judgment to be taken against them in the amount of $200,000. Obviously, plaintiffs did not accept the offer and proceeded to trial on their claims. In light of the jury's verdict, defendants now seek to recover the costs they incurred after the filing of their offer of judgment. Plaintiffs maintain that defendants cannot recover their post-offer costs because defendants' offer of judgment was defective. As set forth in more detail below, the court concludes that plaintiffs should not suffer the consequences of Rule 68 because defendants failed to apportion their offer between the two plaintiffs. Defendants' motion is denied.

---

13.  In their motion, defendants initially sought to recover from plaintiff Lintz nearly $70,000 in attorneys' fees, apparently based on defendants' alleged "prevailing party" status under 42 U.S.C. § 2000e–5(k). After consultation with plaintiff Lintz' counsel, defendants have decided not to pursue recovery of their attorneys' fees or non-taxable expenses. As a result, defendants are seeking to recover only their taxable costs incurred after the filing of defendants' offer of judgment. *See* Fed. R.Civ.P. 68.

Defendants' offer of judgment was made pursuant to Rule 68 of the Federal Rules of Civil Procedure. Rule 68 states that

> At any time more than 10 days before the trial begins, a party defending a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued....
>
> If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Under this scheme, a defendant can protect itself from the costs associated with protracted litigation by making a formal offer of judgment. *Knight v. Snap–On Tools Corp.*, 3 F.3d 1398, 1404 (10th Cir. 1993). If the final judgment is less than the settlement offer, then the plaintiff cannot recover otherwise awardable costs incurred after the date of the offer, and he must pay the defendant's costs incurred after that date. *See* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3006 (2d ed.1997); *Knight,* 3 F.3d at 1405 (when Rule 68 comes into play, plaintiff "may not recover his post-offer costs and must pay [defendant's] post-offer costs"). Moreover, if a plaintiff has rejected an offer of judgment and has obtained a less favorable judgment, then the court cannot disregard the cost-shifting consequences of Rule 68; the consequences are mandatory. *See* Wright, Miller & Marcus, *supra,* § 3006 (and cases cited therein).

With this framework in mind, the court turns to analyze the substance of defendants' offer of judgment. If the offer is valid, then plaintiffs must pay defendants' post-offer costs and are precluded from recovering otherwise awardable post-offer costs.[14] Defendants' offer of judgment states, in its entirety:

> COME NOW Defendants American General Finance, Inc. and MorEquity, by and through its counsel of record, Shook, Hardy & Bacon, L.L.P., and pursuant to Federal Rule of Civil Procedure 68, hereby offers [sic] to allow judgment to be taken against it [sic] by both plaintiffs in the total amount of Two Hundred Thousand Dollars ($200,000.00), said sum to include reasonable costs and attorney's fees accrued by both plaintiffs to date. This offer of judgment is made for the purposes specified in Fed. R.Civ.P. 68 and is not to be construed either as an admission that Defendants are liable in this action or that Plaintiffs have suffered any damage.

According to plaintiffs, defendants' offer is defective for two reasons—it was conditioned upon the acceptance of both plaintiffs and it did not specify how the $200,000 settlement would be divided between the plaintiffs.

The court first addresses plaintiffs' argument that defendants' offer of judgment is defective because it was conditioned upon acceptance by both plaintiffs. The Tenth Circuit has not addressed the validity of a Rule 68 offer of judgment requiring the unanimous acceptance of multiple plaintiffs. In fact, only two federal courts of appeals have addressed this issue—the Ninth Circuit in *Lang v. Gates,* 36 F.3d 73 (9th Cir.1994), and, more recently, the Seventh Circuit in *Amati v. City of Woodstock,* 176 F.3d 952 (7th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 445, 145 L.Ed.2d 362 (1999) (No. 99–216). Both circuits held that a Rule 68 offer conditioned upon acceptance by all plaintiffs is

---

**14.** Plaintiffs assert that the total of their awards, including their attorneys' fees and costs, exceeds defendants' $200,000 offer (which expressly included reasonable costs and attorneys' fees). According to plaintiff Diecidue, her fees and costs were approximately $126,000 at the time defendants made their offer. When this figure is added to Ms.

Diecidue's compensatory damages award, the total is $151,000. Plaintiffs concede, however, that their total award exceeds defendants' offer only if plaintiff Lintz's fees are factored into the equation. Because the court has denied plaintiff Lintz's motion for attorneys' fees in its entirety, it is undisputed that plaintiffs' awards do not exceed defendants' offer.

valid. In *Lang,* the Circuit analyzed the issue by looking to traditional principles of contract construction:

> In determining whether an offer is proper under Rule 68, courts will apply traditional principles of contract construction. *Herrington v. County of Sonoma,* 12 F.3d 901, 907 (9th Cir.1993). Conditional offers have long been recognized as valid under such principles. Restatement (Second) of Contracts, § 29 cmt. a ("The offeror is the master of his offer.... [He] is entitled to insist on a particular mode of manifestation of assent."). We see no reason to depart from these principles here.

36 F.3d at 75; *accord* Wright, Miller & Marcus, *supra,* § 3002 ("In actions involving multiple plaintiffs, defendant can condition its offer on acceptance by all...."). In *Amati,* the Seventh Circuit agreed with the Ninth Circuit's decision in *Lang* and took the analysis one step further. *See* 176 F.3d at 958. As Judge Posner explained:

> We cannot find anything in the rule, or the case law, to support the view that the condition which the defendants imposed—all the plaintiffs must accept the offer of judgment for it to be effective— is invalid, or if it is that the offer is therefore enforceable [sic]. The only appellate case we have found upheld such a condition, *Lang v. Gates,* 36 F.3d 73, 75 (9th Cir.1994), and in support of it we note that since the purpose of an offer of judgment is to settle the case in advance of trial, conditioning it on acceptance by all plaintiffs may be necessary to head off the trial.

*See id.*

▆▆▆ The court believes that the Tenth Circuit, if faced with the issue under the circumstances presented here, would follow the approach of the Ninth and Seventh Circuits and conclude that a defendant may condition its Rule 68 offer of judgment on acceptance by all plaintiffs. Like the Ninth Circuit in *Lang,* the Tenth Circuit (albeit in an unpublished opinion) has recognized that principles of contract law should guide courts in interpreting Rule 68 offers of judgment. *See Medina v. Housing Authority of San Miguel County,* 974 F.2d 1345, 1992 WL 218990, at *2 (10th Cir.1992). Moreover, as Judge Posner recognized in *Amati,* it is highly likely that a trial of this action would have been spared only if both plaintiffs agreed to settle with defendants—plaintiffs' sexual harassment claims were intimately related, involving the same decisionmakers, the same harasser and much of the same evidence. In short, defendants would likely have had little to gain by settling with only one plaintiff. For these reasons, the court concludes that defendants' offer was properly conditioned upon acceptance by both plaintiffs.[15]

The court now turns to address whether the offer is defective because defendants failed to apportion the $200,000 offer between the plaintiffs. In support of their argument that defendants' offer is defective, plaintiffs rely primarily on the recent decision of the Seventh Circuit in *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071 (7th Cir.1999). In *Gavoni,* the defendant made a Rule 68 offer of judgment of $10,000 "to be divided among all three plaintiffs, with costs then accrued." *See* 164 F.3d at 1074. The plaintiffs rejected the offer and the case proceeded to trial. *Id.* Ultimately, the jury found against the defendant and awarded the plaintiffs a total of $6500, with two plaintiffs each receiving $2000 and one plaintiff receiving $2500. *Id.* After trial, the defendant moved for costs pursuant to Rule 68, claiming that "its

---

**15.** The consequences of such an offer, however, might vary depending on whether one plaintiff was eager to accept the offer of judgment while the other plaintiff refused. In such circumstances, an argument could be made that "the conditional offer, through valid, should be ineffectual to block the plaintiff[ ] who had signified [her] desire to accept it from obtaining costs." *See Amati,* 176 F.3d at 959 (recognizing the argument without attempting to resolve it). The court need not address this issue, as there is no evidence or argument before the court that either plaintiff was interested in accepting defendants' offer.

unapportioned $10,000 offer triggered this cost-shifting provision." *Id.* at 1074–75. The district court denied the defendant's motion, holding that it was impossible to determine whether the offer was more favorable than the individual jury awards. *Id.* at 1075.

The Seventh Circuit affirmed the district court's ruling. *See id.* at 1076–78. In reaching its decision, the Circuit first noted the serious monetary consequences a plaintiff faces in deciding whether to accept or reject a Rule 68 offer, because a judgment less favorable than the offer requires that the plaintiff pay the defendant's "usually substantial" post-offer costs. *See id.* at 1076. For this reason, the Circuit emphasized the need for "a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer." *See id.* The Circuit also highlighted the problems of apportioning costs among plaintiffs based on an unapportioned Rule 68 offer, including the increased risk of collateral litigation among co-plaintiffs. *See id.* at 1077–78.

■■■ The court finds the *Gavoni* decision persuasive.[16] In reaching its decision, the Seventh Circuit reiterated that the "better rule" is one that requires "the offeror, always a defendant, to make an offer precise enough to enable each offeree, always a plaintiff, to assess the merits of her claim relative to the value of the offer." *See id.* at 1078 n. 2. Indeed, the Tenth Circuit has recognized this principle in the Rule 68 context. *See Arkla Energy Resources v. Roye Realty & Developing, Inc.,* 9 F.3d 855 (10th Cir.1993) (a party cannot invoke Rule 68 with an ambiguous offer because the offeree must know what is being offered in order to be responsible for refusing the offer). Thus, the court believes that the Tenth Circuit would con-

clude that a Rule 68 offer made to multiple plaintiffs is not valid unless it provides individualized offers to each plaintiff. Defendants here failed to apportion their offer between the plaintiffs. Thus, plaintiffs simply could not measure the value of defendants' offer in relation to the merits of their individual claims. In such circumstances, plaintiffs should not suffer the consequences of rejecting defendants' offer. Defendants' motion for costs is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Susan Lintz's motion to alter or amend judgment or, in the alternative, for new trial on damages (doc. # 210) is **denied**; plaintiff Susan Lintz's motion to award statutory attorney's fees and non-taxable expenses (doc. # 211) is **denied**; and defendants' motion for costs, including attorneys' fees, pursuant to Federal Rules of Civil Procedure 54 and 68 (doc. # 219) is **denied**.

**IT IS SO ORDERED.**

---

**16.** Moreover, defendants have not directed the court to any authority supporting the validity of an unapportioned offer. Defendants have cited a handful of cases which they believe "implicitly" hold that Rule 68 permits unapportioned offers. *See, e.g., Lang v. Gates,* 36 F.3d 73 (9th Cir.1994); *Fred Riley Home Building Corp. v. Cosgrove,* 883 F.Supp. 1487

(D.Kan.1995). Although these cases addressed Rule 68 offers that were unapportioned, a careful reading of these cases reveals that the issue of whether the offer was invalid *because it was unapportioned* was not presented to or addressed by any of the courts.